1  Shannon B. Nakabayashi (State Bar No. 215469)
   Antonio C. Raimundo (State Bar No. 273175)
2  Jinny S. Hwang (State Bar No. 315115)
   JACKSON LEWIS P.C.
3  50 California Street, 9th Floor
   San Francisco CA 94111-4615
4  Telephone    415.394.9400
   Facsimile:   415.394.9401
5  Email:       shannon.nakabayashi@jacksonlewis.com
                antonio.raimundo@jacksonlewis.com
6               jinny.hwang@jacksonlewis.com

7  Attorneys for Defendant
   CSI ELECTRICAL CONTRACTORS, INC.
8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10

11
   | George Huerta, an individual, on behalf of himself and all others similarly situated and as a representative plaintiff, | Case No. |
   |---|---|
   | Plaintiff, | **DEFENDANT CSI ELECTRICAL CONTRACTORS, INC.'S NOTICE OF REMOVAL** |
   | vs. | **[28 U.S.C. §§ 1331, 1332, 1441, 1446, 1453]** |
   | First Solar, Inc., a Delaware corporation; California Flats Solar, LLC, a Delaware Limited Liability Company; CA Flats Solar 130, LLC, a Delaware Limited Liability Company; CA Flats Solar 150, LLC, a Delaware Limited Liability Company; Cal Flats Solar CEI, LLC, a Delaware Limited Liability Company; Cal Flats Solar Holdco, LLC, a Delaware Limited Liability Company; CSI Electrical Contractors, Inc.; Milco National Constructors, Inc.; California Compaction Corporation; and Does 1 through 10, | State Complaint Filed: 7/30/2018<br>State First Amended Complaint Filed: 10/1/2018 |
   | Defendants. | |

---

1

Defendant CSI Electrical Contractors, Inc.'s Notice of Removal

**TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant CSI Electrical Contractors, Inc. ("CSI") removes the above-entitled action to this Court from the Superior Court of the State of California, County of Monterey pursuant to 28 U.S.C. § 1441. CSI invokes this Court's original jurisdiction under 28 U.S.C. § 1332(d) (the Class Action Fairness Act) and 28 U.S.C. § 1331 (federal question). CSI submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff and without conceding that Plaintiff has pled claims upon which relief can be granted. This removal is based on the following grounds:

## I. PROCEDURAL BACKGROUND.

1. On July 30, 2018, Plaintiff George Huerta ("Plaintiff") filed a class action Complaint in the Superior Court of the State of California, County of Monterey, entitled *George Huerta v. First Solar, Inc.*, Case No. 18CV002847. Plaintiff did not serve CSI with his Complaint. A true and correct copy of the Complaint is attached to this Notice of Removal as **Exhibit A**.

2. On October 1, 2018, Plaintiff filed a First Amended Complaint ("FAC") in the Superior Court of the State of California, County of Monterey.

3. On October 8, 2018, Plaintiff served copies of the FAC, the Summons, and Civil Cover Sheet on CSI. True and correct copies of the FAC, Summons, and Civil Cover Sheet served on CSI are attached as **Exhibit B**.

4. On November 6, 2018, CSI filed an Answer to Plaintiff's FAC in the Superior Court of the State of California, County of Monterey. A true and correct copy of CSI's Answer is attached as **Exhibit C**. Exhibits A–C constitute all the pleadings that have been filed or served by or against CSI in this action as of the date of the filing of this Notice of Removal.

## II. REMOVAL IS TIMELY.

5. Plaintiff served CSI with the FAC on October 8, 2018. Declaration of Steve Watts ("Watts Decl."), ¶ 2. The present Notice of Removal is timely under 28 U.S.C. §§ 1446(b) and 1453. *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999). No previous Notice of

1 | Removal has been filed or made with this Court for the relief sought herein.

2 | **III.   NOTICE.**

3 | 6.   CSI will promptly serve this Notice of Removal on all parties and promptly file a copy of this Notice of Removal with the Clerk of the Superior Court, County of Monterey, as required by 28 U.S.C. § 1446(d).

6 | **IV.   PLAINTIFF'S ALLEGATIONS.**

7 | 7.   Defendants are engaged in the development and construction of a solar power project, referred to herein as California Flats Solar Project ("CFSP"). (*See* Exh. B (FAC) ¶¶ 11, 30.) Plaintiff alleges that the nine Defendants in this action were "employers, co-employers and/or joint employers" of himself and all similarly situated employees. (*Id.* at ¶¶ 12, 18.)

11 | 8.   Plaintiff alleges a security gate entrance near a Highway 46 is the access point employees use to drive to CFSP. (Exh. B (FAC) at ¶ 30.) Plaintiff alleges there is a ten-mile non-public road between the security gate and CFSP parking lots and job sites where employees perform work for Defendants. (*Id.* at ¶ 30.)

15 | 9.   Plaintiff claims that Defendants: (1) did not pay employees for time spent waiting in vehicle lines and traveling 10 or more miles from the security gate entrance to parking lots or job sites at the beginning of their shifts; and (2) did not pay employees for time spent traveling from job sites or parking lots back to the security gate entrance at the end of their shifts. (Exh. B (FAC) at ¶¶ 30–36.)

20 | 10.   Plaintiff's FAC alleges a putative class and a putative "sub-class." (Exh. B (FAC) at ¶ 16.) The "Unpaid Wages Class" is defined as "[a]ll non-exempt employees of any of the Defendants who worked at the California Flats Solar Project within the period beginning four years prior to the filing of this action through the date of judgment. (*Id.*) The "Termination Pay Sub-Class" is defined as "[a]ll members of the Unpaid Wages Class whose employment terminated at any time within the period beginning three years prior to the filing of this action through the date of judgment." (*Id.*)

27 | 11.   Plaintiff alleges six claims on behalf of himself and the putative class: (1) failure to pay compensation due (FAC ¶¶ 24–43); (2) failure to furnish itemized wage statements (*Id.* at

¶¶ 44–51); (3) failure to pay wages timely upon termination (*Id.* at ¶¶ 52–59); (4) violation of Labor Code § 2802 (*Id.* at ¶¶ 60–64); (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17203 (the "UCL") (*Id.* at ¶¶ 65–74); and (6) recovery of civil penalties pursuant to the California Private Attorneys General Act ("PAGA") (*Id.* at ¶¶ 75–80).

## V. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA.

12. Plaintiff brings this action as a putative class action.[1] Removal based upon the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 because (1) the amount placed in controversy by the FAC exceeds, in the aggregate, $5,000,000, exclusive of interest and costs; (2) the aggregate number of putative class members in all proposed classes is 100 or greater; and (3) diversity of citizenship exists between at least one putative class member and the named defendants in this matter. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1089–90, 1090 n.2 (9th Cir. 2010). Although CSI denies Plaintiff's factual allegations and denies that Plaintiff or the classes he purports to represent are entitled to the relief requested, all requirements for jurisdiction under CAFA have been met in this case.

### A. The Putative Class Has More Than 100 Members.

13. To remove under CAFA, the aggregate number of putative class members in all proposed classes must be greater than 100. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B); *United Steel*, 602 F.3d at 1090, 1090 n.2. Plaintiff's FAC defines an Unpaid Wages Class and a Termination Pay Sub-Class, which is included within the Unpaid Wages Class. (Exh. B, (FAC) ¶ 16.) Plaintiff alleges "**there are more than 600 class members.**" (*Id.* at ¶ 19.) Accordingly, there are at least 100 members of the proposed classes here.

### B. Diversity Of Citizenship Exists.

14. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, that one putative class member is a citizen of a state different

---

[1] CSI denies and reserves the right to contest at the appropriate time, that this action can properly proceed as a class action.

from any defendant. 28 U.S.C. § 1332(d)(2)(a) (under CAFA's minimal diversity requirements, diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant"); *United Steel*, 602 F.3d at 1090–91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

15. "An individual is a citizen of the state in which he is domiciled. . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). The FAC alleges that Plaintiff is a California resident. (Exh. B (FAC) ¶ 1.) Therefore, Plaintiff is a citizen of California for diversity jurisdiction purposes. Moreover, Plaintiff has brought claims on behalf of putative class members residing in California. (*Id.* at ¶ 16.) Thus, at least one putative class member is a citizen of California for diversity jurisdiction purposes.

16. For diversity purposes, a corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

17. Defendant First Solar, Inc. is incorporated under the laws of Delaware and has its principal place of business in Arizona. (Exh. B (FAC) ¶ 2.) Therefore, Defendant First Solar, Inc. is a citizen of Delaware and Arizona.

18. Defendant CSI is incorporated under the laws of California and has its principal place of business in California. (Exh. B (FAC) ¶ 8.) On information and belief, Defendant Milco National Constructors, Inc. is a Delaware Corporation and Defendant California Compaction Corporation is a California corporation; on information and belief, both companies conduct business in California. (*Id.* at ¶¶ 9–10.)

19. CAFA provides that an unincorporated association is a citizen of the state where it has its principal place of business and under whose laws it is organized. 28 U.S.C. § 1332(d)(10).

1  *See Lafountain v. Meridian Senior Living*, No. CV 15-03297-RGK (PJWx), 2015 U.S. Dist.
2  LEXIS 84134, at *5 n.2 (C.D. Cal. Jun. 29, 2015); *Ferrell v. Express Check Advance of S.C. LLC*,
3  591 F.3d 698, 705 (4th Cir. 2010) (under CAFA, an LLC is a citizen of the State under whose
4  laws it is organized and the State where it has its principal place of business); *Marroquin v. Wells
5  Fargo, LLC*, No. 11-CV-163-L-BLM, 2011 U.S. Dist. LEXIS 10510, 2011 WL 476540 (S.D.
6  Cal. Feb. 3, 2011) (applying *Ferrell* to find that minimum diversity existed).[2]

20.  Defendants California Flats Solar, LLC; CA Flats Solar 130, LLC; CA Flats Solar 150, LLC; Cal Flats Solar CEI, LLC; and Cal Flats Solar Holdco, LLC (collectively, the "Cal Flats LLC Defendants") are Delaware limited liability companies with their principal place of business in Arizona. (*Id.* at ¶¶ 3–7.) The Cal Flats LLC Defendants are citizens of Delaware and Arizona.

21.  It is not necessary for DOES 1 through 10 to join in this removal as they have been sued under fictitious names, have not been served or received the Summons or the FAC, and, under 28 U.S.C. § 1441(b)(1), are disregarded for purposes of removal and are not proper parties in this Court.

22.  Accordingly, at least one member of the putative class is a citizen of a state different from six named defendants. Plaintiff is a citizen of California; Defendant First Solar, Inc. and the five Cal Flats LLC Defendants are citizens of Delaware and Arizona for the purposes of determining diversity. 28 U.S.C. §§ 1332(c)(1), (d)(10). As a result, diversity jurisdiction exists under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

### C. The Amount in Controversy Exceeds $5,000,000.

23.  Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Plaintiff may not avoid removal to federal court under CAFA's $5,000,000 amount in controversy requirement by expressly alleging or subsequently

---

[2] Under Section 1332's clear and unequivocal language, an LLC need only demonstrate its own State of registration and principal place of business.

stipulating that damages fall below that sum. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1347 (2013). Because Plaintiff has not expressly pled a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5,000,000. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

24.  CSI's burden to establish the amount in controversy is the preponderance of the evidence standard. *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014). *See also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases). A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554. "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109–14, at 42 (2005) (citation omitted).

25.  A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations." *Oda v. Gucci America, Inc.*, Case No. 2:14-cv-7468-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *12 (C.D. Cal. Jan. 7, 2015); *see Sanchez v. Russell Sigler, Inc.*, Case No. CV 15-01350-AB (PLAx), 2015 U.S. Dist. U.S. LEXIS 55667, at *5 (C.D. Cal. Apr. 28, 2015). ("[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages.") (citation omitted). *See also LaCross v. Knight Transport. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable"); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy"). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's FAC, not what a defendant will actually owe. *LaCross*, 775 F.3d at 1202 (explaining that courts are

directed "to first look to the complaint in determining the amount in controversy") (citation omitted).

26. Under *Dart Cherokee*, a removing defendant is not required to submit evidence in support of its removal allegations. *Roa v. TS Staffing Servs., Inc.*, Case No. 2:14-cv-08424-ODW (MRW), 2015 U.S. Dist. LEXIS 7442, at *4–5 (C.D. Cal. Jan. 22, 2015). However, as detailed below, CSI has both plausibly alleged and established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 and the Court has jurisdiction pursuant to CAFA.

27. Although CSI denies Plaintiff's factual allegations and denies that Plaintiff or the classes he seeks to represent are entitled to any relief, Plaintiff's allegations have more likely than not put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[3]

28. Plaintiff's central allegation is that CSI and the other Defendants did not pay employees for travel time between the security gate at the public highway and the worksite or parking lots at CFSP. (FAC ¶¶ 30–36.) Plaintiff alleges that "the drive from the Security Gate Entrance to the parking lot took approximately 40 minutes or more." (*Id.* at ¶ 30.) He further alleges that once "they arrived at the parking lot, Plaintiff and the other class members were required to wait in lines to sign in… Because of the large number of workers, class members could have to wait 10 to 15 minutes to get through these lines." (*Id.* at ¶ 31.) Plaintiff claims that at that at the end of the day, he and putative class members had to repeat the 40 minute drive. (*Id.* at ¶ 34.) As a result, Plaintiff alleges that Defendants failed to pay the putative class members a minimum of 90-95 minutes of travel time per day. (*Id.* at ¶¶ 30–34.)

29. All CSI employees who worked at CFSP are members of a union, the International

---

[3] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's FAC. CSI's references to potential damage amounts based on Plaintiff's allegations are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. CSI maintains that each of Plaintiff's claims is without merit and that CSI is not liable to Plaintiff or any putative class member. In addition, CSI denies that liability or damages can be established on a classwide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiffs will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commcn's., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

Brotherhood of Electrical Workers Local 234 ("Local 234"). (Watts Decl., ¶ 4.) Pursuant to an agreement between IBEW 234 and the National Electrical Contractors Association ("NECA") the standard base hourly rate for projects in Monterey County is between $46.15 and $50.77. (*Id.* at Exh. 2, pp. 12–13.) The lowest hourly rate for CSI employees at CFSP is $20.77.[4] *Id.*

30.   CFSP was planned and constructed in two phases. (Watts Decl., ¶ 3.) CSI began working on the project during the second phase on or about July 30, 2016. There have been 118 weeks between July 30, 2016 and November 2, 2018.

31.   Assuming that during the 118 week period that has elapsed to date, the 600 class members each were conservatively entitled to one hour or 60 minutes of travel time pay at the lowest hourly rate for this project ($20.77 per hour), the amount in controversy would be **$7,352,580** ($20.77 per hour x 1 hour per day x 600 putative class members x 5 days per week x 118 weeks).

32.   Accordingly, this single component (travel time) of Plaintiff's damages for unpaid wages surpasses the $5,000,000 CAFA threshold.

33.   In addition to his travel time claim, Plaintiff seeks damages on behalf of himself and the putative class for: (1) failure to pay for on-duty meal and rest breaks (Exh. B (FAC) ¶¶ 37–38); (2) wage statement penalties under California Labor Code Section 226 (*id.* at ¶¶ 44–51); (3) waiting time penalties under California Labor Code Section 203 (*id.* at ¶¶ 52–59); and (4) unreimbursed expenses under California Labor Code Section 2802(*id.* at ¶¶60–64). These potential damages and/or penalties significantly increase the amount in controversy. Finally, Plaintiff seeks his attorneys' fees and costs (*id.*, Prayer for Relief ¶¶ 10–11). Although CSI denies Plaintiff's claim for attorneys' fees, for purposes of removal, the Ninth Circuit uses a benchmark rate of twenty-five percent of the potential damages as the amount of attorneys' fees. *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund).

34.   Based on the foregoing, all requirements for CAFA removal are satisfied here.

---

[4] Based on the lowest negotiated hourly rate for an apprentice wireman on the project. *See* Watts Decl., Exh. 2, pp. 11-13.

## VI. THIS COURT ALSO HAS ORIGINAL JURISDICTION BECAUSE THIS MATTER PRESENTS A FEDERAL QUESTION UNDER THE LMRA.

35.  U.S. district courts have original jurisdiction over lawsuits involving federal law. 28 U.S.C. §1331 ("The district courts shall have original jurisdiction of all civil actions under the . . . laws . . . of the United States."). When a case filed in state court falls within the original jurisdiction of a U.S. district court, a defendant may remove the matter to federal court. 28 U.S.C. § 1441(a).

36.  Removal is proper here because Plaintiff's FAC raises questions of federal law under section 301 of the federal Labor Management Relations Act (the "LMRA"). Section 301 states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act … may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). "[A]lthough the language of [LMRA] § 301 is limited to 'suits for violation of contracts,' it has been broadly construed to cover most state-law actions that require interpretation of labor agreements." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1016 (9th Cir. 2000). "When resolution of a state-law claim is substantially dependent upon analysis of the terms of a collective-bargaining agreement, that claim must either be treated as a 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).

37.  At all relevant times, CSI was and is an employer within the meaning of Section 2(2) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(2).

38.  All the CSI employees who worked at CFSP are members of Local 234. On information and belief, at all relevant times, IBEW 234 was and is a labor organization within the meaning of Section 2(5) of the NLRA, 29 U.S.C. § 152(5).

39.  For purposes of the CFSP, the CBA is memorialized in several documents. One of these documents is the 2017 Project Labor Agreement for the California Flats Solar Project Phase 2 (the "PLA"). (Watts Decl., ¶ 5.) Attached as **Exhibit 1** to the Watts Declaration is a true and

1  correct copy of the PLA. (*Id.* at ¶ 5.)

2  40.  A second document forming part of the CBA is the Inside Agreement (the "Inside Agreement") by and between Local 234 and the Monterey Bay, California Chapter of the National Electrical Contractors Association ("NECA") (of which CSI is a member). (Watts Decl., ¶ 6.) **Exhibit 2** to the Watts Declaration is a true and correct copy of the Inside Agreement. (*Id.* at ¶ 6.)

41.  A third document forming part of the CBA is the 2018 Letter of Understanding (the "LOU") between Local 234 and the Monterey Bay, California Chapter of the NECA. (Watts Decl., ¶ 7.) **Exhibit 3** to the Watts Declaration is a true and correct copy of the LOU. (*Id.* at ¶ 7.)

42.  The PLA, the Inside Agreement, and the LOU are all part of the CBA that governs the work carried out by the CSI employees who have worked at the CFSP. (Watts Decl., ¶ 8.)

43.  Plaintiff alleges CSI did not pay class members for time they spent traveling from a security gate entrance to parking lots or job sites at the beginning of their shifts, or for time spent traveling from job sites or parking lots back to the security gate entrance at the end of their shifts. (Exh. B (FAC) ¶¶ 30–36.) In other words, Plaintiff alleges CSI failed to properly pay its employees for what is called reporting time pay under California law. (*Id.* at ¶ 29.)

44.  Wages for construction workers, such as CSI's employees at CFSP, are governed by California Industrial Welfare Commission Wage Order 16-2001 ("the Wage Order"). 8 Cal. Code Regs. § 11160. Section 5 governing reporting time pay states: "[a]ll employer-mandated travel that occurs after the first location where the employee's presence is required by the employer shall be compensated at the employee's regular rate of pay . . . ." 8 Cal. Code Regs. § 11160(5)(A). However, Section 5 also states that where the parties are subject to a collective bargaining agreement, the CBA provisions control. 8 Cal. Code Regs. § 11160(5)(D) ("This section shall apply to any employees covered by a valid collective bargaining agreement unless the collective bargaining agreement expressly provides otherwise.").

45.  Here, a valid CBA expressly provides that the Wage Order's rules on reporting time pay do not apply to CSI employees who have worked at the CFSP. The LOU states:

> Employees shall be required to report to an assigned area designated by the Employer, which shall be a job shack or a company-owned gang box, and this

location shall be considered their first site of work. Irrespective or how far the assigned area is from the badge-in gate that is used by Employees to enter the Project, Employees will be required to walk or travel to their first site of work on [their] own time and to walk or travel from their last place of work back to the gate on the Employer's time. This "in on your time, out on the Company's" arrangement means that employees will not be compensated for the time spent traveling from the fate to their assigned work areas at the beginning of the work day, but that they will be compensated at the applicable rate under the Agreement for time spent traveling back to the badge-in gate at the end of their shifts. *This is also intended to constitute a collectively-bargained agreement in the construction industry relieving the Employer of its obligation to compensate employees for employer-mandated travel time as provided in California Industrial Welfare Commission Wage Order 16, Section 5(D).*

(Watts Decl., Exh. 3 (LOU) at 1 (emphasis added).)

46. "Plaintiffs cannot avoid removal by 'artfully pleading' only state law claims that are actually preempted by federal statutes such as section 301 of the Labor Management Relations Act." *Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1992) (citation omitted). "Thus, if a state law claim is completely preempted by a federal statute such as section 301, the state law cause of action necessarily becomes a federal one and can be removed." *Id.* Here, the FAC alleges only state law violations, and neglects to mention that class members are bound by a valid CBA, including the LOU, which specifically addresses the principal injury Plaintiff alleges (a failure to pay reporting time pay). However, the Court is empowered to look beyond the FAC to the CBA documents, which make clear Plaintiff's claims are preempted by the LMRA. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("The district court . . . properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement artfully pleaded to avoid federal jurisdiction.") (internal quotation marks omitted).

47. Federal question jurisdiction under LMRA Section 301 arises (1) where the plaintiff asserts a claim based upon a right conferred upon employees by a CBA, or (2) where the resolution of a plaintiff's state-law claims are substantially dependent on the interpretation of a CBA. *Firestone v. So. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000). Both grounds for asserting jurisdiction under Section 301 apply here.

48. First, even though Plaintiff styles his first, second, third, and fourth causes of action as violations of the California Labor Code, he is in fact claiming that CSI breached the

terms of the LOU. (*See* Exh. B (FAC) ¶¶ 24–64.) The LOU states CSI must pay employees for time traveling from worksites or parking lots back to the security gate at the end of their shifts, but CSI has no obligation to pay them for time traveling from the security gate to worksites and parking lots at the beginning of their shifts. (Watts Decl., Exh. 3 (LOU) at 1.) Because Plaintiff alleges CSI never paid employees any reporting time pay, Plaintiff's allegations boil down to a contention that CSI did not perform under the LOU. Accordingly, Plaintiff is asserting a claim based upon a right conferred upon employees by the CBA, and preemption is justified. *Firestone*, 219 F.3d at 1065.

49. Second, there are numerous circumstances in which the Court will need to interpret one or more of the CBA documents referenced above to resolve Plaintiff's claims. The following is a non-exhaustive list of such circumstances.

a. **PLA coverage.** The PLA states, "This Agreement covers all on-site construction, alteration, demolition or repair of buildings, structures, and other works which are part of the Project." (Watts Decl., Exh. 1 (PLA) at ¶ 2.1.) However, the PLA does not define the Project's geographic boundaries, or the term "on-site." The Court will have to interpret whether reporting time pay is covered by the PLA, by no agreement at all, or by a side agreement, such as the LOU. Moreover, while the LOU applies to CSI employees who worked at the CFSP, the same may not be true for other putative class members who worked for other Defendants. (*See* Watts Decl., Exh. 3 (LOU) at 1.) Upon information and belief, CSI alleges that at least some of the employees of other Defendants are not covered by the LOU.

b. **Defendants' joint liability.** Upon information and belief, some of the defendants—*e.g.*, Milco National Constructors, Inc., and California Compaction Corporation—are not bound by the LOU. The circumstances under which non-signatory employers can be deemed liable for breaches of a CBA is a question of federal law under the LMRA.[5]

c. **Union jurisdiction and wage rate for travel time.** Article 9 of the PLA governs the assignment to each signatory union of the work tasks over which it has jurisdiction. (Watts

---

[5] CSI is without sufficient information or knowledge as to whether the other Defendants are "employers" or "joint employers" within the meaning of California law.

Decl., Exh. 1 (PLA) at 12.) State and federal law permit a different rate to be applied to travel time. Work assignments for each of the signatory unions are set forth in Attachment B to the PLA. Attachment B does not refer to reporting time pay. (*Id.* at 20–21.) Assuming the reporting time pay here is covered work, the PLA will have to be interpreted to determine which signatory union has jurisdiction over reporting time pay for putative class members, and to determine which wage rate would apply to reporting time pay. Upon information and belief, CSI alleges that employees of the other Defendants would be the subject of other CBA documents not included with the present Notice of Removal. For example, if employees of other Defendants are bound by other CBA documents, different wages might apply for those employees.

        d.    **Travel time rules.** The Inside Agreement and the LOU contain rules governing traveling to and from the CFSP project site. (*E.g.*, Watts Decl., Exh. 2 at 9–10, 11–13 (Inside Agreement §§ 3.01, 3.04). These rules must be interpreted to determine the presence of sufficient employer control over the putative class members to render travel time compensable.

        50.    Plaintiff's fifth cause of action (UCL violations) and sixth cause of action (PAGA penalties) are derivative of Plaintiff's reporting time pay theory. Accordingly, these causes of action are directly founded on rights created by the CBA, are substantially dependent on an interpretation of the CBA, and are therefore preempted by the LMRA.

## VII. SUPPLEMENTAL JURISDICTION.

        51.    To the extent any of Plaintiff's claims are not removable under CAFA or the LMRA, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because they are part of the same common nucleus of operative facts over which this Court has original jurisdiction.

## VIII. VENUE.

        52.    "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). As stated above, Plaintiff brought this action in California Superior Court, County of Monterey. Thus, venue properly lies in the United States

District Court for the Northern District of California. 28 U.S.C. §§ 84(a), 1441(a).

## IX. CONCLUSION.

Based on the foregoing, CSI requests that this action be removed to this Court. If any question arises as to the propriety of removal of this action, CSI respectfully requests the opportunity to present a brief and oral argument in support of its argument that removal is proper.

Dated: November 7, 2018                     JACKSON LEWIS P.C.

                                     By:    /s/ Shannon B. Nakabayashi
                                            Shannon B. Nakabayashi
                                            Antonio C. Raimundo
                                            Jinny S. Hwang
                                            Attorneys for Defendant
                                            CSI ELECTRICAL CONTRACTORS, INC.

4826-9162-8921, v. 5