1

2

PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.

3

2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
Telephone:     (818) 883-4900
Fax:             (818) 338-2533
Email:          peter@dion-kindemlaw.com

4

5

6

LONNIE C. BLANCHARD, III (SBN 93530)
THE BLANCHARD LAW GROUP, APC
5211 East Washington Boulevard, No. 2262
Commerce, California 90040
Telephone:     (213) 599-8255
Fax:             (213) 402-3949
Email:          lonnieblanchard@gmail.com

7

8

9

10

11

Attorneys for Plaintiff George Huerta

12

13

## UNITED STATES DISTRICT COURT

14

## NORTHERN DISTRICT OF CALIFORNIA

15

16

17

George Huerta, an individual, on behalf of himself and all others similarly situated and as a representative plaintiff,

18

Plaintiff,

19

vs.

20

21

First Solar, Inc., a Delaware corporation; California Flats Solar, LLC, a Delaware Limited Liability Company; CA Flats Solar 130, LLC, a Delaware Limited Liability Company; CA Flats Solar 150, LLC, a Delaware Limited Liability Company; Cal Flats Solar CEI, LLC, a Delaware Limited Liability Company; Cal Flats Solar Holdco, LLC, a Delaware Limited Liability Company; CSI Electrical Contractors, Inc.; Milco National Constructors, Inc.; California Compaction Corporation; and Does 1 through 10,

22

23

24

25

26

27

Defendants.

28

Case No.  5:18-cv-06761-BLF
**CLASS ACTION**

**Plaintiff's Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement and Award of Attorney's  Fees and Costs and Class Representative Award**

**Date:**        April 8, 2021
**Time:**        9:00 AM
**Ctrm:**        3

**Table of Contents**

I.    INTRODUCTION. ...................................................................................................1

II.   THIS SETTLEMENT WARRANTS FINAL APPROVAL. .........................................1

    A.    The settlement is fair, adequate, and reasonable.......................................1

        1.    The strength of Plaintiff's case .....................................................2

        2.    The risk, expense, complexity, and duration of further litigation...............2

        3.    The risk of obtaining and maintaining class action status ..........................2

        4.    The amount offered in settlement is reasonable given the realistic value of the claims considering the litigation risks.......................................................2

        5.    The discovery completed and the status of proceedings.............................3

        6.    The experience and views of counsel ........................................................3

        7.    The reaction of the class members to the proposed settlement...................3

III.  THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED. ...................................................................................4

IV.   THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS. .............................4

    A.    Class List.................................................................................................5

    B.    Notification to Class Members .................................................................5

    C.    Toll Free Telephone Helpline ..................................................................6

    D.    Settlement Website ..................................................................................6

    E.    Disputes..................................................................................................7

    F.    Exclusions and Objections ......................................................................7

    G.    Settlement Payments...............................................................................7

    H.    Administration Costs ..............................................................................8

V.    THIS COURT SHOULD GRANT CLASS COUNSELS' REQUEST FOR ATTORNEYS' FEES BECAUSE THE AMOUNT SOUGHT IS FAIR AND REASONABLE. ...........................................................8

    A.    The U.S. Supreme Court has endorsed the percentage-of-the-recovery method for awarding attorneys' fees where class action litigation results in the creation of a common fund. ...........................................................................................8

    B.    Courts in the Ninth Circuit have explicitly endorsed the percentage-of-the-recovery method in awarding attorneys' fees in the context of class action settlements...............................................................................................9

    C.    Courts in the Ninth Circuit have also found that a request for fees of one-third of the entire common fund is fair and reasonable. ....................................................10

    D.    Class counsels' request for attorneys' fees as a percentage of the entire settlement fund is reasonable in view of the Ninth Circuit's fee range and other relevant factors.......................................................................................................11

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

1.    Class Counsel obtained a substantial recovery for the Class.....................11

2.    The contingent nature of the litigation and associated risks .....................11

3.    The risks and complexities of the litigation.................................................12

4.    The experience of Class Counsel .................................................................13

5.    The high caliber of Defendants' counsel ....................................................14

6.    The applicability of fee-shifting statutes......................................................14

7.    The lack of objections from class members.................................................15

E.    The requested attorneys' fees are also justified by the loadstar method................15

VI.    THE COURT SHOULD AWARD CLASS COUNSEL THEIR COSTS. ...............................17

VII.    THE INCENTIVE PAYMENT TO PLAINTIFF SHOULD BE APPROVED. ........................18

VIII.    CONCLUSION.................................................................................................19

**Table of Authorities**

**Cases**

*A Alyeska Pipeline Service Co. v. Wilderness Society* (1975) 421 U.S. 240 .......................... 9

*Ashker v. Sayre* (N.D. Cal., Mar. 7, 2011, No. 05-03759 CW) 2011 WL 825713 ................................ 17

*Behrens v. Wometco Enterprises, Inc.* (S.D. Fla. 1988) 118 F.R.D. 534................................... 16

*Bejarano v. Amerisave Mortgage Corp.*, No. CV 08-00599 (E.D. Cal.)................................. 10

*Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715................................... 12

*Blum v. Stenson* (1984) 465 U.S. 886 ................................... 9

*Boeing Co. v. Van Gemert* (1980) 444 U.S. 472................................... 9

*Bond v. Ferguson Enterprises, Inc.* (E.D. Cal., June 30, 2011, No. 1:09-CV-1662 OWW MJS) 2011
    WL 2648879 ................................... 16

*Chavez, et al. v. Petrissans*, et al., No. 08-00122 (E.D. Cal.)................................... 10

*Chin v. Wachovia Financial Services Inc. et al.*, No. 08-00684 (N.D. Cal.)........................... 10

*Churchill Village, L.L.C. v. General Electric* (9th Cir. 2004) 361 F.3d 566 ........................... 4

*Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268............................................ 1

*Clifford v. Trump* (C.D. Cal., Dec. 11, 2018, No. CV1806893SJOFFMX) 2018 WL 6519029 ........... 16

*Eisen v. Carlisle and Jacquelin* (1974) 417 U.S. 156................................... 4

*Evans v. Jeff D.* (1986) 475 U.S. 717................................... 8, 14

*Fernandez v. Victoria Secret Stores, LLC* (C.D. Cal., July 21, 2008, No. CV 06-04149 MMM SHX)
    2008 WL 8150856 ................................... 16

*Garner v. State Farm Mut. Auto. Ins. Co.* (N.D. Cal., Apr. 22, 2010, No. CV 08 1365 CW) 2010 WL
    1687829................................... 15

*Gentry v. Superior Court* (2007) 42 Cal.4th 443 ................................... 12

*Glass v. UBS Financial Services, Inc.* (N.D. Cal., Jan. 26, 2007, No. C-06-4068 MMC) 2007 WL
    221862................................... 18

*Gribble v. Cool Transports Inc.* (C.D. Cal., Dec. 15, 2008, No. CV 06-04863 GAF SHX) 2008 WL
    5281665................................... 3

*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011................................... 10

*Harris v. Marhoefer* (9th Cir. 1994) 24 F.3d 16 ................................... 17

*In re Equity Funding Corp. of America Securities Litigation* (C.D. Cal. 1977) 438 F.Supp. 1303 ....... 14

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

*In re General Instrument Securities Litigation* (E.D. Pa. 2001) 209 F.Supp.2d 423.............................. 14

*In re Heritage Bond Litigation* (9th Cir. 2008) 546 F.3d 667 ...................................................... 1

*In re Heritage Bond Litigation* (C.D. Cal., June 10, 2005, No. 02-ML-1475 DT) 2005 WL 1594403  10, 13

*In re Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F.Supp.2d 1166............................ 17

*In re Immunex Securities Litigation* (W.D. Wash. 1994) 864 F.Supp. 142............................................ 15

*In re King Resources Co. Securities Litigation* (D. Colo. 1976) 420 F.Supp. 610................................ 14

*In re Media Vision Technology Securities Litigation* (N.D. Cal. 1996) 913 F.Supp. 1362.................... 17

*In re Mego Financial Corp. Securities Litigation* (9th Cir. 2000) 213 F.3d 454 .................................. 10

*In re Oracle Securities Litigation* (N.D. Cal. 1990) 131 F.R.D. 688................................................... 9

*In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373.............................. 3, 10, 13

*In re Portal Software, Inc. Securities Litigation* (N.D. Cal., Nov. 26, 2007, No. C-03-5138 VRW) 2007 WL 4171201 .......................................................................................................................... 2

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* (3d Cir. 1998) 148 F.3d 283 ................................................................................................................................................ 16

*In re Rite Aid Corp. Securities Litigation* (3d Cir. 2005) 396 F.3d 294 ................................................ 15

*In re Syncor ERISA Litigation* (9th Cir. 2008) 516 F.3d 1095 ........................................................... 1

*In re Washington Public Power Supply System Securities Litigation* (9th Cir. 1994) 19 F.3d 1291 ..... 11

*J. N. Futia Co. v. Phelps Dodge Industries, Inc.* (S.D.N.Y., Sept. 17, 1982, No. 78 CIV. 4547) 1982 WL 1892 ......................................................................................................................................... 14

*Leyva v. Medline Industries Inc.* (9th Cir. 2013) 716 F.3d 510 .......................................................... 11

*Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234............................................... 3

*Marshall v. Holiday Magic, Inc.* (9th Cir. 1977) 550 F.2d 1173 ........................................................ 3

*Mashburn v. National Healthcare, Inc.* (M.D. Ala. 1988) 684 F.Supp. 679 ........................................ 12

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523 2, 3

*Paul, Johnson, Alston & Hunt v. Graulty* (9th Cir. 1989) 886 F.2d 268 ................................................ 9

*Perry v. SunAmerica*, No. CV 07-1193 (C. D. Cal.)............................................................................. 10

*Powers v. Eichen* (9th Cir. 2000) 229 F.3d 1249................................................................................. 10

*Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948 .................................................. 2, 18

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

*Romero v. Producers Dairy Foods, Inc.* (E.D. Cal., Nov. 14, 2007, No. 1:05CV0484 DLB) 2007 WL 3492841 .................................................................................................................. 10

*Schiller v. David's Bridal, Inc.* (E.D. Cal., June 11, 2012, No. 1:10-CV-00616-AWI) 2012 WL 2117001 .................................................................................................................. 18

*Schiller v. David's Bridal, Inc.* (E.D. Cal., June 11, 2012, No. 1:10-CV-00616-AWI) 2012 WL 2117001 .................................................................................................................... 4

*Simpson v. e*Trade*, No. CV 06-156 (C. D. Cal.) ......................................................... 10

*Singer v. Becton Dickinson and Co.* (S.D. Cal., June 1, 2010, No. 08-CV-821-IEG (BLM)) 2010 WL 2196104 .............................................................................................................. 10, 19

*Six (6) Mexican Workers v. Arizona Citrus Growers* (9th Cir. 1990) 904 F.2d 1301 ............................ 9

*Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938 ...................................................... 9, 15

*Syed v. M-I, L.L.C.* (E.D. Cal., July 27, 2017, No. 112CV01718DADMJS) 2017 WL 3190341 .... 10, 17

*Torrisi v. Tucson Elec. Power Co.* (9th Cir. 1993) 8 F.3d 1370 .............................................. 9

*Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.* (9th Cir. 2006) 460 F.3d 1253 ............................................................................................................. 17

*Van Vranken v. Atlantic Richfield Co.* (N.D. Cal. 1995) 901 F.Supp. 294 ................................... 16, 18

*Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d 759 ............................................... 9

*Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043 ................................................ 10, 11

*Vizcaino v. Microsoft Corp.* (W.D. Wash. 2001) 142 F.Supp.2d 1299 ................................ 12, 13, 14, 15

*Weisbarth and List v. H R Block Financial Advisors, Inc.*, No. 07-00236 (C.D. Cal.) ......................... 10

*Williams v. Costco Wholesale Corp.* (S.D. Cal., July 7, 2010, No. 02CV2003 IEG(AJB)) 2010 WL 2721452 ................................................................................................................... 9

*Williams v. MGM-Pathe Communications Co.* (9th Cir. 1997) 129 F.3d 1026 ................................. 8, 14

*Winzelberg v. Liberty Mutual Ins. Co.*, No. CV 07-460 (C.D. Cal) ......................................... 10

*Wren v. RGIS Inventory Specialists* (N.D. Cal., Apr. 1, 2011, No. C-06-05778 JCS) 2011 WL 1230826 ................................................................................................................... 1

## Rules

Fed. R. Civ. Proc. 23 ............................................................................................... 1, 4

Fed. Rules Civ.Proc., rule 23 .................................................................................... 8

## I.  INTRODUCTION.

Plaintiff George Huerta ("Plaintiff") seeks final approval of this class action settlement, that resolves class action claims against Defendants Milco National Constructors, Inc. ("Milco") and California Compaction Corporation ("Settling Defendants") alleged in this action. This settlement does not settle claims against non-settling Defendant CSI Electrical Contractors, Inc. ("CSI"), but, as discussed below, there is a limited release of CSI for any conduct of Milco related to Milco employees leased to CSI. No class members objected to or opted out of the settlement (Brunner Decl. ¶¶ 15, 16).

The Court has already preliminarily approved the partial settlement and, as discussed below, should grant final approval of the settlement.

## II.  THIS SETTLEMENT WARRANTS FINAL APPROVAL.

A proposed class action settlement can be "settled, voluntarily dismissed, or compromised only with the court's approval." (*See* Fed. R. Civ. Proc. 23(e).)  Thus, to approve this proposed class action settlement, this Court must conclude that the proposed settlement is "fair, adequate and reasonable," and is the product of arms-length and informed negotiations. (*See In re Heritage Bond Litigation* (9th Cir. 2008) 546 F.3d 667, 674.) According to the Ninth Circuit, "there is a strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." (*See In re Syncor ERISA Litigation* (9th Cir. 2008) 516 F.3d 1095, 1101 (citing *Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268, 1276).)

### A.    The settlement is fair, adequate, and reasonable.

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," as required by Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court may consider some or all of the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;[1]

---

[1] This factor is not addressed because there is no governmental participant. (*See, e.g., Wren v. RGIS Inventory Specialists* (N.D. Cal., Apr. 1, 2011, No. C-06-05778 JCS) 2011 WL 1230826, at *10, *supplemented* (N.D. Cal., May 13, 2011, No. C-06-05778 JCS) 2011 WL 1838562 ("Because

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

and (8) the reaction of the class members to the proposed settlement.  (*See Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 963.)  Plaintiff addresses each of these factors below.

### 1.    The strength of Plaintiff's case

Although Plaintiff steadfastly maintains that Plaintiff's claim is meritorious, Plaintiff appreciates that Defendants' defenses to certification made certification potentially problematic. Despite Defendants' defenses, however, Plaintiff secured a substantial recovery for the class through this settlement. This factor therefore supports final approval.  (*See* Dion-Kindem Decl., ¶ 4.) Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (*National Rural Telecommunications Cooperative v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 526 (internal quotations omitted).)

### 2.    The risk, expense, complexity, and duration of further litigation

This settlement avoids the risk of non-recovery and the additional accompanying expense associated with an appeal if the case was not certified. (*In re Portal Software, Inc. Securities Litigation* (N.D. Cal., Nov. 26, 2007, No. C-03-5138 VRW) 2007 WL 4171201, at *3 (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").) Therefore, this factor supports final approval. (*See* Dion-Kindem Decl., ¶ 5.)

### 3.    The risk of obtaining and maintaining class action status

Absent settlement, there was a risk that there would not be a certified class at the time of trial. This factor also supports final approval. (*See* Dion-Kindem Decl., ¶ 6.)

### 4.    The amount offered in settlement is reasonable given the realistic value of the claims considering the litigation risks.

As this Court concluded in its preliminary approval order, the settlement agreement's terms fall within the range of reasonableness. As detailed in the motion for preliminary approval, this settlement provides a monetary recovery for the settlement class in the face of vigorously disputed claims.  Given the litigation risks involved regarding the merits, Plaintiff submits that this settlement is squarely

there is no governmental entity involved in this litigation, the seventh factor is inapplicable").)

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

2

within the realm of being fair, reasonable, and adequate. (*See* Dion-Kindem Decl., ¶ 7.) Indeed, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." (*Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1242 (internal quotations omitted).)

### 5.    The discovery completed and the status of proceedings

Plaintiff has conducted substantial discovery, including taking the depositions of Defendants' Persons Most Knowledgeable and obtaining the production of substantial data and other documentation regarding Defendants' policies and practices. Only class certification and damages remained to be determined. Thus, this factor also supports final approval. (*See* Dion-Kindem Decl., ¶ 8.)

### 6.    The experience and views of counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." (*In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 378.) Here, Plaintiff is represented by competent, experienced, and aggressive class action counsel who pressed Plaintiff's claims forward against corporate defendants represented by well-qualified law firms. (*See* Dion-Kindem Decl., ¶ 9.) Consideration of this factor therefore strongly supports final approval. (*See, e.g.*, *Gribble v. Cool Transports Inc.* (C.D. Cal., Dec. 15, 2008, No. CV 06-04863 GAF SHX) 2008 WL 5281665, at *9 ("Great weight is accorded to the recommendation of counsel, who are most likely acquainted with the facts of the underlying litigation.").)

### 7.    The reaction of the class members to the proposed settlement

A court may infer that a class action settlement is fair, adequate, and reasonable when few class members object. (*See Marshall v. Holiday Magic, Inc.* (9th Cir. 1977) 550 F.2d 1173, 1178.) "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." (*See National Rural Tele. Coop., supra*, 221 F.R.D. at 529.)

Here, not a single class member filed an objection to the proposed settlement after notice was provided to members of the Settlement Class informing them about the terms of the proposed

---

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

settlement, their estimated individual settlement payout and rights under the settlement, the amounts sought by Class Counsel in attorneys' fees and costs, and the amounts sought by the Class Representative as an enhancement award. (Brunner Decl. ¶ 16.) Moreover, not a single class member elected to opt-out of this settlement. (Brunner Decl. ¶ 15.) Thus, this factor supports final settlement approval. (*See* Dion-Kindem Decl., ¶ 10.)

**III.    THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED.**

In its preliminary approval order, this Court preliminarily certified the settlement class for settlement purposes only. The Court found that the Settlement Class met the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy, and satisfied the Rule 23(b)(3) requirements of predominance and superiority.  Because circumstances have not changed, and for the reasons set forth in Plaintiff's motion for preliminary approval, Plaintiff requests that the Court finally certify the Settlement Class for settlement purposes under Rule 23(e). (*See Schiller v. David's Bridal, Inc.* (E.D. Cal., June 11, 2012, No. 1:10-CV-00616-AWI) 2012 WL 2117001, at *8, *report and recommendation adopted* (E.D. Cal., June 28, 2012, No. 1:10-CV-616-AWI-SKO) 2012 WL 13040405 ("As initially determined in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.").)

**IV.    THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS.**

Due process requires that notice be provided to class members by the best reasonable method available. (*See Eisen v. Carlisle and Jacquelin* (1974) 417 U.S. 156, 173 [94 S.Ct. 2140, 2150, 40 L.Ed.2d 732].) Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (*See Churchill Village, L.L.C. v. General Electric* (9th Cir. 2004) 361 F.3d 566, 575.) Here, the parties engaged with Simpluris, Inc., an experienced third-party settlement administrator, to mail the Class Notice and related forms to settlement class members. (Brunner Decl., ¶¶ 2.) The concurrently-filed declaration of Meagan Brunner details Simpluris' settlement administration efforts.

---

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

1

### A.   Class List

2   On November 5, 2020, Counsel for Defendant Milco National Constructors, Inc. provided

3   Simpluris with a data list containing the names, Social Security numbers, last known addresses, and

4   pertinent employment information during the Class Period for each Class Member. The data contained

5   records for 361 individuals identified as Class Members. (Brunner Decl., ¶ 3.)

6   On November 16, 2020, Counsel for Defendant California Compaction Corporation provided

7   Simpluris with a data list containing the names, Social Security numbers, last known address, and

8   pertinent employment information during the Class Period for each Class Member. The data contained

9   records for 140 individuals identified as Class Members. Combing the two data sets ("Class List")

10  provided records for 470 unique individuals identified as Class Members. (Brunner Decl., ¶ 4.)

11  The mailing addresses contained in the Class List were processed and updated utilizing the

12  National Change of Address Database ("NCOA") maintained by the U.S. Postal Service ("USPS").

13  The NCOA contains changes of addresses filed with the USPS.  In the event that any individual had

14  filed a USPS change of address request, the address listed with the NCOA was utilized in connection

15  with the mailing of the Notices. (Brunner Decl., ¶ 5.)

16  ### B.   Notification to Class Members

17  On or before November 19, 2020, Simpluris received the Court-approved Notice from the

18  parties. The Notice advised Class Members of their right to opt out of the Settlement, object to the

19  Settlement, or do nothing, and the implications of each such action. The Notice also advised Class

20  Members of applicable deadlines and other events, including the date of the Final Approval Hearing,

21  and how Class Members could obtain additional information. (Brunner Decl., ¶ 6.)

22  On November 25, 2020, Simpluris advised the Parties there were 31 Class Members who were

23  employed by both Settling Defendants. The Parties agreed to add additional language to the Notice to

24  notify the Class Members of their individual payroll from each Defendant. (Brunner Decl., ¶ 7.)

25  On December 15, 2020, Simpluris caused the Notice ("Notice Packet") to be mailed via First

26  Class U.S. Mail to 439 Class Members. A true and correct copy of the Notice Packet is attached hereto

27  as **Exhibit A**. (Brunner Decl., ¶ 8.)

28

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

On December 15, 2020, Simpluris caused the Notice with the additional language ("Adjusted Notice Packet") to be mailed via First Class U.S. Mail to 31 Class Members. A true and correct copy of the Adjusted Notice Packet is attached hereto as **Exhibit B**. (Brunner Decl., ¶ 9.)

As of the date of this declaration, 56 Notice Packets were returned by the post office. For the Notice Packets returned without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on all of these addresses. Simpluris used the Class Member's name, previous address and Social Security number to locate a more current address. Of the 56 retuned Notice Packets, 53 Notice Packets were re-mailed to either a newfound address or with forwarding addresses provided by USPS. The remaining 3 Notice Packets were undeliverable because Simpluris was unable to find a better address. (Brunner Decl., ¶ 10.)

As of the date of this declaration, 2 Adjusted Notice Packets were returned by the post office. For the Adjusted Notice Packets returned without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on all of these addresses. Simpluris used the Class Member's name, previous address and Social Security number to locate a more current address. Of the 2 retuned Adjusted Notice Packets, 2 Adjusted Notice Packets were re-mailed to either a newfound address or with forwarding addresses provided by USPS. (Brunner Decl., ¶ 11.)

C.    **Toll Free Telephone Helpline**

Simpluris established and is maintaining a toll-free telephone number, (888) 836-1354, for the purpose of allowing the Class Members to contact Simpluris and to make inquiries regarding the Settlement. The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement administration process.  Callers have the option to speak with a live call center representative during normal business hours or to leave a message during non-business hours and receive a return call during.  The toll-free telephone number was set forth in the Notice Packet and Adjusted Notice Packet. (Brunner Decl., ¶ 12.)

D.    **Settlement Website**

Class Members were provided a website to www.Simpluris.com/Case-Information to download a copy of the Joint Stipulation of Class Action Settlement Between George Huerta and Milco National

Constructors, Inc. and California Compaction Corporation. The website URL was set forth in the Notice Packet and Adjusted Notice Packet. The documents were posted on or before December 15, 2020, and is accessible 24 hours a day, 7 days a week. (Brunner Decl., ¶ 13.)

### E.    Disputes

The postmark deadline for Class Members to dispute the Defendant's records that were pre-printed in their Notice Packet was February 13, 2021. As of the date of this declaration, Simpluris has received 0 disputes. (Brunner Decl., ¶ 14.)

### F.    Exclusions and Objections

The postmark deadline for Class Members to submit a Request for Exclusion to the Simpluris was February 13, 2021.  As of the date of this declaration, Simpluris has received 0 Requests for Exclusions. (Brunner Decl., ¶ 15.)

The postmark deadline for Class Members to object to the Settlement was February 13, 2021. As of the date of this declaration, Simpluris has received 0 objections to the Settlement. (Brunner Decl., ¶ 16.)

### G.    Settlement Payments

As of the date of Simpluris' declaration, there were 470 Class Members who will be paid their portion of the Net Settlement Fund, estimated to be $153,500.00 The Net Settlement Amount available to pay Participating Class Members was determined as follows:

| | |
|---|---|
| **Gross Settlement Fund:** | **$300,000.00** |
| Less Attorneys' Fees (Requested): | -$100,000.00 |
| Less Litigation Costs (Requested): | -$25,000.00 |
| Less PAGA – LWDA: | -$7,500.00 |
| Less Settlement Administration: | -$9,000.00 |
| Less Plaintiff Service Awards (Requested): | -$5,000.00 |
| **Net Settlement Fund:** | **$153,500.00** |

(Brunner Decl., ¶ 17.)

As of the date of Simpluris' declaration, the average estimated payment is $326.60 and the highest estimated payment is $3,261.64. Should the Court-awarded fees or costs differ than those

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

shown above, or if the number of Class Members approved for payment changes, the estimated award allocation calculations will change accordingly. (Brunner Decl., ¶ 18.)

### H.    Administration Costs

Simpluris' total costs for services in connection with the administration of this Settlement, including fees incurred and anticipated future costs for completion of the administration, is $9,000.00. (Brunner Decl. ¶ 19.)

## V.    THIS COURT SHOULD GRANT CLASS COUNSELS' REQUEST FOR ATTORNEYS' FEES BECAUSE THE AMOUNT SOUGHT IS FAIR AND REASONABLE.

Plaintiff requests an award of attorneys' fees in the sum of $100,000 payable from the $300,000 gross settlement amount as agreed to by Defendants, an award of total costs payable to Class Counsel as set forth in the accompanying Declarations of Peter R. Dion-Kindem and Lonnie C. Blanchard III, and an award of a $7,500 incentive award to Plaintiff George Huerta in recognition of Plaintiff's effort and work in prosecuting the Action on behalf of the Settlement Class Members as provided and agreed to by Defendants in the Settlement Agreement.

Fed. Rules Civ.Proc., Rule 23(h) of the Federal Rules of Civil Procedure provides that a court may award reasonable attorney's fees and costs in a certified class action when authorized "by the parties' agreement." In this case, the Settlement provides that Plaintiff may seek an award of attorneys' fees of up to one-third of the gross settlement of $300,000. Plaintiff therefore requests an award of attorneys' fees in the amount of $100,000. (Dion-Kindem Decl., ¶ 11.) As discussed below, this Court should grant Class Counsels' request because Plaintiff has given adequate notice of this request to class members in accordance with Rule 23(h)(1) and because the amount sought is fair, adequate, and reasonable under the circumstances of this case.

### A.    The U.S. Supreme Court has endorsed the percentage-of-the-recovery method for awarding attorneys' fees where class action litigation results in the creation of a common fund.

"[T]he Supreme Court has indicated that the parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees." (*Williams v. MGM-Pathe Communications Co.* (9th Cir. 1997) 129 F.3d 1026, 1027 (*citing Evans v. Jeff D.* (1986) 475 U.S. 717, 734–735 [106 S.Ct. 1531, 1541, 89 L.Ed.2d 747]); *see also Williams v. Costco Wholesale*

*Corp.* (S.D. Cal., July 7, 2010, No. 02CV2003 IEG(AJB)) 2010 WL 2721452, at *6 ("Parties to a class action may appropriately negotiate the payment of attorneys' fees and costs in conjunction with the settlement of the action itself.").) It also "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." (*Boeing Co. v. Van Gemert* (1980) 444 U.S. 472, 478 [100 S.Ct. 745, 749, 62 L.Ed.2d 676]; *Alyeska Pipeline Service Co. v. Wilderness Society* (1975) 421 U.S. 240 [95 S.Ct. 1612, 44 L.Ed.2d 141] (common fund doctrine permits recovery of attorneys' fees and costs from money obtained from defendants).)

In *Blum v. Stenson* (1984) 465 U.S. 886, 900 fn. 19 [104 S.Ct. 1541, 1550, 79 L.Ed.2d 891], the Supreme Court explained that under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund bestowed on the class." This method "rests on the presumption that persons who obtain benefits of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." (*Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 967.) This rule is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel. (*Paul, Johnson, Alston & Hunt v. Graulty* (9th Cir. 1989) 886 F.2d 268, 271.) As such, it is only fair that every class member who benefits from the settlement pay his or her pro rata share of attorneys' fees.

## B. Courts in the Ninth Circuit have explicitly endorsed the percentage-of-the-recovery method in awarding attorneys' fees in the context of class action settlements.

The Ninth Circuit has repeatedly endorsed the use of the "percentage-of-recovery" method in common fund cases. (*See, e.g., Paul, Johnson, Alston & Hunt v. Graulty, supra,* 886 F.2d at 271–72 (explaining that it is well-settled that a lawyer who helps create a common fund should be allowed to share in the award); *Torrisi v. Tucson Elec. Power Co.* (9th Cir. 1993) 8 F.3d 1370; *Six (6) Mexican Workers v. Arizona Citrus Growers* (9th Cir. 1990) 904 F.2d 1301; *Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d 759, 769 ("a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees"); *In re Oracle Securities Litigation* (N.D. Cal. 1990) 131 F.R.D. 688, 694, *modified* (N.D. Cal. 1990) 132 F.R.D. 538 ("there is growing recognition in the

---

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

courts that the percentage contingent fee is a suitable method for compensating counsel in a common fund class action … . Indeed, when compared to the murky criteria of the lodestar approach, contingent fee compensation is vastly superior").)

    **C.**    **Courts in the Ninth Circuit have also found that a request for fees of one-third of the entire common fund is fair and reasonable.**

    The Ninth Circuit has adopted a 25% "benchmark" for attorneys' fees in common fund cases. (*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1029; *Powers v. Eichen* (9th Cir. 2000) 229 F.3d 1249, 1256; *see also Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043.) A number of Ninth Circuit courts have indicated that the benchmark may be one-third or higher, however. (*See, e.g.*, *In re Mego Financial Corp. Securities Litigation* (9th Cir. 2000) 213 F.3d 454, 460, *as amended (June 19, 2000)* (affirming award of fees equal to one-third of total recovery); *In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 379 (awarding 33% of $12 million common settlement fund); *Syed v. M-I, L.L.C.* (E.D. Cal., July 27, 2017, No. 112CV01718DADMJS) 2017 WL 3190341, at *7 (attorney's fees of $2,333,333.33 equal to one-third of gross settlement approved by Judge Drozd); *Romero v. Producers Dairy Foods, Inc.* (E.D. Cal., Nov. 14, 2007, No. 1:05CV0484 DLB) 2007 WL 3492841 (33% fee awarded); *Singer v. Becton Dickinson and Co.* (S.D. Cal., June 1, 2010, No. 08-CV-821-IEG (BLM)) 2010 WL 2196104, at *8 (approving attorney fee award of 33.33% of the common fund and holding that the award was similar to awards in three other wage and hour class actions where fees ranged from 30.3% to 40%); *In re Heritage Bond Litigation* (C.D. Cal., June 10, 2005, No. 02-ML-1475 DT) 2005 WL 1594403 (33.33% percentage of common fund fee award approved); *Chin v. Wachovia Financial Services Inc. et al.*, No. 08-00684 (N.D. Cal.) (33% award); *Burrows v. Combined Ins. Co. of Am.*, No. 08-01752 (E.D. Cal.) (33% award); *Bejarano v. Amerisave Mortgage Corp.*, No. CV 08-00599 (E.D. Cal.) (33% award); *Weisbarth and List v. H R Block Financial Advisors, Inc.*, No. 07-00236 (C.D. Cal.) (33% award); *Winzelberg v. Liberty Mutual Ins. Co.*, No. CV 07-460 (C.D. Cal) (33% award); *Perry v. SunAmerica*, No. CV 07-1193 (C. D. Cal.) (33% award); *Simpson v. e*Trade*, No. CV 06-156 (C. D. Cal.) (33% award); *Chavez, et al. v. Petrissans*, et al., No. 08-00122 (E.D. Cal.) (33% award).)

    This is also consistent with Class Counsels' experience. (Dion-Kindem Decl., ¶¶ 12-17.)

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

**D.    Class counsels' request for attorneys' fees as a percentage of the entire settlement fund is reasonable in view of the Ninth Circuit's fee range and other relevant factors.**

In view of the authorities discussed above, Class Counsels' request of one-third of the gross settlement amount is reasonable and falls within the fee range in the Ninth Circuit and elsewhere. As explained below, several additional factors also show that the amount of Class Counsels' attorneys' fees request is fair and reasonable, which include, but are not necessarily limited to, the contingent nature of the fee, the risks and complexities of the litigation, the experience of Class Counsel, the high caliber of Defendants' counsel, the impact of the litigation on Class Counsels' ability to obtain and perform other work, the applicability of fee-shifting statutes to the claims asserted, and the class members' reaction to the requested attorneys' fees award.

**1.    Class Counsel obtained a substantial recovery for the Class.**

Class Counsel obtained a substantial recovery for the settlement class. Class Counsel have therefore performed a valuable public service, and, given the relatively small individual amounts at issue, this settlement furthers public policy by using the class action procedure to provide redress to those individuals who would otherwise not be able to access the judicial system to recover the statutory damage due them. (Dion-Kindem Decl., ¶ 18.) As the Ninth Circuit stated in *Leyva v. Medline Industries Inc.* (9th Cir. 2013) 716 F.3d 510, 515, "In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims."

**2.    The contingent nature of the litigation and associated risks**

The contingent nature of this litigation is an important factor that shows the reasonableness of the requested attorneys' fees. (*Vizcaino*, 290 F.3d at 1049–50.) Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. (*In re Washington Public Power Supply System Securities Litigation* (9th Cir. 1994) 19 F.3d 1291, 1299.) As noted by the court in *In re Washington Pub. Power Supply Sys. Sec. Litig.,* it is an established practice to reward attorneys who take on the

---

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

added risk of a contingency case. (*Id.*) Indeed, it is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. (*See* Richard Posner, *Economic Analysis of Law* §21.9, at 534- 35 (3d ed. 1986).)

Moreover, fee awards in successful cases, such as the present action, encourage and support meritorious class actions and thereby promote private enforcement of, and compliance with, employee and consumer protection laws. (*See, e.g., Mashburn v. National Healthcare, Inc.* (M.D. Ala. 1988) 684 F.Supp. 679, 687 ("[A] financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid."); *accord Gentry v. Superior Court* (2007) 42 Cal.4th 443, 462 [64 Cal.Rptr.3d 773, 786, 165 P.3d 556, 567]; *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 745 [9 Cal.Rptr.3d 544, 570], *as modified on denial of reh'g (Mar. 9, 2004)*.)

In this case, Class Counsel are being paid entirely on contingency and have not been paid any attorneys' fees since assuming representation of Plaintiff. (Dion-Kindem Decl., ¶ 19.) In turn, Class Counsel and their staff members have devoted numerous hours that they could have spent on other matters, albeit lower risk contingency or hourly ones, than on this particular litigation. During that time period, in addition to the time they have spent working on this case, Class Counsel have also incurred out-of-pocket expenses, all of which they would likely not have been able to recover if this litigation had been unsuccessful. (*Id.*) Further, as discussed below, they expended these sums and incurred these costs in the pursuit of highly risky litigation. Accordingly, the contingent nature of the fee and surrounding circumstances show that the amount of Class Counsels' attorneys' fees request is fair and reasonable. (*Id.*)

### 3.    The risks and complexities of the litigation

The risks of the litigation and the novelty and complexity of the issues involved are also important factors in determining a fair and reasonable attorneys' fees award. (Dion-Kindem Decl., ¶ 20.) (*Vizcaino v. Microsoft Corp.* (W.D. Wash. 2001) 142 F.Supp.2d 1299, 1303–1306, *aff'd* (9th Cir. 2002) 290 F.3d 1043.) In light of these considerations, courts in the Ninth Circuit have recognized that

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

a high-risk factor is one reason for increasing attorneys' fee awards above the 25% benchmark, where contingency litigation is the norm rather than the exception. (*See id.* at 1303–04; *see also In re Pac. Enter. Sec. Litig.*, *supra*, 47 F.3d at 379 (33% of the common fund as attorney's fees was justified because of the complexity of the issues and the risks).) In *Vizcaino*, the Court explained that the case was extremely risky for class counsel to pursue because of negative facts, the lack of controlling law, and the vigorous defense of the case. (*Vizcaino,* 142 F. Supp. 2d at 1303.) The *Vizcaino* Court further noted that class counsel's risk in that case was even greater and their work was more difficult because the defendant was a large and formidable company. (*Id.*)

As noted in the Memorandum in Support of Plaintiffs' Motion for Preliminary Approval, this litigation presented significant risks given the legal uncertainties, nuances, and other complexities of the law governing the claims at issue herein. (Dion-Kindem Decl., ¶ 20.)

Likewise, even assuming that Plaintiff would have prevailed on class certification, there still would have been a substantial risk that a certified class might have been decertified at a later point in the litigation based on changes in the law or other future developments. These risks are all the more magnified considering that this case is pending in federal court, where orders denying class certification/granting class decertification are not immediately appealable as a matter of right as they are in California courts. (Dion-Kindem Decl., ¶ 20.)

The risks of this litigation, therefore, show that the requested attorneys' fees are reasonable. Class Counsel took on this representation well aware of the risks involved and with the full intention of seeing it to the end, including through any appeals (and they could still, in theory, have to litigate appellate issues pending the outcome of this motion and the expiration of the appeals period). In the face of the risks involved and the authorities discussed above, Class Counsel performed tremendous amount of work and vigorously litigated this Action. Class Counsels' request for fees is fair and reasonable. (Dion-Kindem Decl., ¶ 21.)

### 4.    The experience of Class Counsel

The experience of Class Counsel also justifies a one-third fee award. (*See In re Heritage Bond Litigation* (C.D. Cal., June 10, 2005, No. 02-ML-1475 DT) 2005 WL 1594403 (awarding fees of one-

third of common fund where counsel specialized in same type of litigation); *In re General Instrument Securities Litigation* (E.D. Pa. 2001) 209 F.Supp.2d 423, 432–433 (experience of counsel justified one-third fee award of common fund).) The quality of Class Counsels' work and the efficacy and dedication with which it was performed should be compensated. (*See, e.g.*, *J. N. Futia Co. v. Phelps Dodge Industries, Inc.* (S.D.N.Y., Sept. 17, 1982, No. 78 CIV. 4547) 1982 WL 1892.) Here, as their attached declarations reflect, the firms that comprise Class Counsel collectively have extensive experience in employment litigation generally and wage and hour class action litigation specifically and have been able to obtain this settlement in spite of the risk of litigation. Accordingly, this factor also shows that the requested fee award is reasonable.

### 5.    The high caliber of Defendants' counsel

The caliber of opposing counsel is another important factor in assessing the quality of Class Counsels' work and the reasonableness of the attorneys' fees request. (*Vizcaino*, *supra*, 142 F. Supp. 2d at 1303; *In re Equity Funding Corp. of America Securities Litigation* (C.D. Cal. 1977) 438 F.Supp. 1303, 1337; *In re King Resources Co. Securities Litigation* (D. Colo. 1976) 420 F.Supp. 610, 634.) Here, Class Counsel were opposed by attorneys from an experienced labor law firm with the resources of a large corporate client at their disposal. (Dion-Kindem Decl., ¶ 22.) Despite facing such worthy adversaries, Class Counsel achieved an good result for the Settlement Class.

### 6.    The applicability of fee-shifting statutes

This case involves a statute that allows Plaintiff to recover attorneys' fees from the opposing party, specifically the fee shifting provisions of California Labor Code §§ 1197, 218.5, and 226(e). Where fee-shifting statutes are involved, it is entirely proper for settlements to hinge on negotiation of attorneys' fees. (*See Evans v. Jeff D.*, *supra*.) In light of these fee-shifting statutes, the parties agreed to accept a contingency award based upon the Ninth Circuit percentage-of-the-recovery fee range. (*Williams v. MGM-Pathe Communs. Co.*, *supra*.) This consideration also supports the reasonableness of the requested fee award. (Dion-Kindem Decl., ¶ 23.)

1

7.        **The lack of objections from class members**

2

The absence of objections to, or requests for exclusion from, the Settlement also demonstrates

3

the fairness and reasonableness of Class Counsels' request for fees. (*See Garner v. State Farm Mut.*

4

*Auto. Ins. Co.* (N.D. Cal., Apr. 22, 2010, No. CV 08 1365 CW) 2010 WL 1687829, at *2 ("a single

5

objection out of a sizeable class, after notice, further demonstrates the reasonableness and fairness of

6

Class Counsels' request"); *In re Rite Aid Corp. Securities Litigation* (3d Cir. 2005) 396 F.3d 294, 305,

7

*as amended (Feb. 25, 2005)* (explaining that low level of objections is a "rare phenomenon").) Here,

8

notices of the Settlement were mailed to Class Members, which notices informed them that Class

9

Counsel would apply for attorneys' fees of up to one-third of the gross settlement amount and

10

reimbursement of expenses of up to $20,000.00 and further advised them of their right to object to such

11

requests. No class submitted any objections. (Brunner Decl., ¶ 16.) Accordingly, the absence of

12

objections speaks to the fairness of the requested award of attorneys' fees. (Dion-Kindem Decl., ¶ 24.)

13

E.        **The requested attorneys' fees are also justified by the loadstar method.**

14

Fees may be awarded based on the lodestar method (calculated by applying counsels' hourly

15

rates to the time spent and a risk multiplier where appropriate). (*Staton v. Boeing Co.* (9th Cir. 2003)

16

327 F.3d 938, 968.) "District Courts often use the lodestar method as a cross-check on the percentage

17

method in order to ensure a fair and reasonable result." (*Vizcaino, supra.* 142 F.Supp.2d at 1305 (citing

18

*In re Immunex Securities Litigation* (W.D. Wash. 1994) 864 F.Supp. 142, 144.) In using the lodestar

19

approach, the court may apply a risk multiplier, by which the base lodestar figure is multiplied in order

20

to increase (or decrease) the award of attorney fees based on such factors as the risk involved and the

21

length of the proceedings.

22

Class Counsels' requested attorneys' fees are also justified under the loadstar method. Using

23

Class Counsels' normal hourly rates, the "lode-star" fees incurred by Class Counsel (excluding

24

paralegal hours for Peter R. Dion-Kindem and The Blanchard Law Group, APC), is as follows:

25

26

27

28

| Attorney | Years of Experience | Hours | Rate | Fees |
|---|---|---|---|---|
| Lonnie C. Blanchard III | 40 | 163.25 | $875 | $142,843.75 |
| Peter R. Dion-Kindem | 40 | 234.50 | $875 | $205,187.50 |
| | | | Total: | $348,031.25 |
| | | | Fees Sought: | $100,000.00 |
| | | | Multiplier: | 0.29 |

(Dion-Kindem Decl., ¶¶ 25-28; Blanchard Decl., ¶¶ 7-8.)

In *Clifford v. Trump* (C.D. Cal., Dec. 11, 2018, No. CV1806893SJOFFMX) 2018 WL 6519029 (appeal pending), an anti-SLAPP, lawsuit, Judge Otero stated the following about billing rates for attorneys in California

> Based on the unique nature of this litigation and the Court's familiarity with the fees charged in this jurisdiction, the Court concludes that Defendant's rate requests are reasonable. In similar First Amendment anti-SLAPP litigation involving highly qualified attorneys, a court in the Northern District of California held that ***experienced partners were entitled to between $880 and $995 per hour***, senior associates were entitled to between $450 and $535 per hour, and junior associates were entitled to $355 per hour. *See* Open Source Sec., Inc. v. Perens, No. 17-CV-04002-LB, 2018 WL 2762637, at *7 (N.D. Cal. June 9, 2018). . . . (Emphasis added.)

This case is certainly as legally complex, if not more complex, than an anti-SLAPP case. Moreover, Class Counsel has submitted declarations substantiating their requested hourly rates.

Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.' " (*Bond v. Ferguson Enterprises, Inc.* (E.D. Cal., June 30, 2011, No. 1:09-CV-1662 OWW MJS) 2011 WL 2648879, at *12) (quoting *Fernandez v. Victoria Secret Stores, LLC* (C.D. Cal., July 21, 2008, No. CV 06-04149 MMM SHX) 2008 WL 8150856.) Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier is typically applied. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." (*Van Vranken v. Atlantic Richfield Co.* (N.D. Cal. 1995) 901 F.Supp. 294, 298 (citing *Behrens v. Wometco Enterprises, Inc.* (S.D. Fla. 1988) 118 F.R.D. 534, 549, *aff'd sub nom. Behrens v. Wometco Enterprises* (11th Cir. 1990) 899 F.2d 21); *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* (3d Cir. 1998) 148 F.3d 283, 341 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting Newberg).)

1

2          Here, the proposed fee award would result in a negative multiplier of .29. This is on the lower

3   end of multipliers which are typically approved in class action settlements. (*See* 4 Newberg on Class

4   Actions § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1

5   or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *see also*

6   *Syed v. M-I, L.L.C.* (E.D. Cal., July 27, 2017, No. 112CV01718DADMJS) 2017 WL 3190341, at *7

7   (district court approved lodestar of 2.15 in connection with cross-check of attorney fee award of

8   $2,333,333.33 (one-third of settlement amount)).) (Dion-Kindem Decl., ¶ 28.)

9   **VI.    THE COURT SHOULD AWARD CLASS COUNSEL THEIR COSTS.**

10          Under the Agreement, Defendants agreed not to oppose any application or motion by Class

11   Counsel for an award of costs not to exceed $25,000. The Class Counsel Costs shall be paid out of the

12   Gross Settlement Amount. (*See* Dion-Kindem Declaration, ¶ 29.) Courts have recognized that Class

13   Counsel should be reimbursed their litigation costs. (*See Harris v. Marhoefer* (9th Cir. 1994) 24 F.3d

14   16, 19 (counsel should recover "those out-of-pocket expenses that would normally be charged to a fee

15   paying client"); *see also Ashker v. Sayre* (N.D. Cal., Mar. 7, 2011, No. 05-03759 CW) 2011 WL

16   825713, at *3 ("The costs of reproducing pleadings, motions and exhibits are typically billed by

17   attorneys to their fee-paying clients" and are reimbursable); *Trustees of Const. Industry and Laborers*

18   *Health and Welfare Trust v. Redland Ins. Co.* (9th Cir. 2006) 460 F.3d 1253, 1258–1259 (legal research

19   costs  reimbursable); *In re Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F.Supp.2d

20   1166, 1178 (mediation expenses, consultant and expert fees, legal research, copies, postage, filing fees,

21   messenger and federal express costs reimbursable); *Marhoefer*, *supra*, 24  F.3d at 19 (postage expenses

22   reimbursable); *In re Media Vision Technology Securities Litigation* (N.D. Cal. 1996) 913 F.Supp. 1362,

23   1371 ("A filing fee or serving fee is unquestionably a necessary expense of every litigation").)

24          The total costs incurred by Counsel are $12,900.96. (Dion-Kindem Decl., ¶ 32; Blanchard

25   Declaration, ¶ 6.) The litigation expenses by Class Counsel were reasonably incurred. (Dion-Kindem

26   Decl., ¶ 31; Blanchard Declaration, ¶ 5.) No objections have been filed to the requested reimbursement

27   of costs. (Dion-Kindem Decl., ¶ 30.) Thus, the Court should grant the request for costs.

28

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

1

**VII.  THE INCENTIVE PAYMENT TO PLAINTIFF SHOULD BE APPROVED.**

The Settlement Agreement provides that Plaintiff will apply for an incentive award of up to $7,500 to compensate Plaintiff appropriately for the risk in pursuing the litigation and the efforts in prosecuting this case including retaining and assisting counsel and keeping abreast of the litigation. Defendants agreed not to oppose the request. Any portion of the Class Representative Service Award not awarded to Plaintiff will not revert to Defendants, but instead shall be returned to the Net Settlement Amount for distribution to class members. (Dion-Kindem Decl., ¶ 33.) ***Class Counsel is agreeable to reduce the requested incentive award to $5,000***. Not a single class member filed an objection to this request. (Dion-Kindem Decl., ¶ 34.)

The proposed amount of plaintiff's incentive award is lower than awards found to be fair and reasonable in other cases. (*See, e.g., Van Vranken v. Atlantic Richfield Co.* (N.D. Cal. 1995) 901 F.Supp. 294, 300 (holding that incentive award of $50,000 to each named plaintiff was fair and reasonable); *Glass v. UBS Financial Services, Inc.* (N.D. Cal., Jan. 26, 2007, No. C-06-4068 MMC) 2007 WL 221862, at *16, *aff'd* (9th Cir. 2009) 331 Fed.Appx. 452 (approving incentive award of $25,000 for each of four named plaintiffs).) (Dion-Kindem Decl., ¶ 35.)

Here, Plaintiff filed this class action to enforce California's labor law through private enforcement. Plaintiff spent many hours assisting Class Counsel in prosecuting this case. Plaintiff's efforts included gathering documents for use in this lawsuit, communicating with Class Counsel on numerous occasions, strategizing with Class Counsel, and communicating with Class Counsel regarding settlement issues. Plaintiff also bore the substantial financial risk associated with class action litigation, potentially being personally responsible for substantial costs if the claims did not succeed. (Dion-Kindem Decl., ¶ 36.)

Consequently, the Court may and should award an incentive payment to Plaintiff "to compensate [the] class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." (*See Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 958–959; *Schiller v. David's Bridal, Inc.* (E.D. Cal., June 11, 2012, No. 1:10-CV-00616-AWI) 2012 WL 2117001, at *23, *report and recommendation adopted* (E.D. Cal., June 28, 2012, No. 1:10-CV-

**Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement**

616-AWI-SKO) 2012 WL 13040405 (granting request for incentive payment based on class representative's efforts in assisting class counsel and financial risk, *inter alia*).)

Moreover, the requested incentive payment is not excessive -- the amount constitutes only 1.67% of the total amount payable by Defendant. (*See, e.g.*, *Singer v. Becton Dickinson and Co.* (S.D. Cal., June 1, 2010, No. 08-CV-821-IEG (BLM)) 2010 WL 2196104, at *7 (approving incentive payment constituting 2.5% of gross settlement fund).) (Dion-Kindem Decl., ¶ 37.)

## VIII. CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court enter an order granting final approval.

Dated: March 11, 2021                    THE DION-KINDEM LAW FIRM

BY: _____
                    PETER R. DION-KINDEM, P.C.
                    PETER R. DION-KINDEM
                    Attorney for Plaintiff George Huerta