United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| GEORGE HUERTA, an individual, on behalf of himself and all others similarly situated and as a representative plaintiff,<br><br>Plaintiff,<br><br>v.<br><br>CSI ELECTRICAL CONTRACTORS, INC.,<br><br>Defendant. | Case No. 18-cv-06761-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CSI ELECTRICAL CONTRACTORS, INC.'S POST-APPEAL MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Re: ECF 201] |

This wage and hour class action arises from the construction and operation of the California Flats Solar Project ("the Project"), a solar power facility in Monterey County, California. Plaintiff George Huerta ("Huerta") filed suit against nine companies involved in the Project, asserting individual claims, putative class claims, and a representative claim under California's Private Attorney General Act ("PAGA"). He dismissed or settled those claims as to all defendants except CSI Electrical Contractors, Inc. ("CSI").

After granting Huerta's motion for class certification, this Court granted partial summary judgment for CSI on all class claims and the PAGA claim, and entered a stipulated judgment for Huerta on his remaining individual claims to facilitate appeal. The United States Court of Appeals for the Ninth Circuit ("the Ninth Circuit") stayed Huerta's appeal while it certified three questions of state law to the California Supreme Court. After the California Supreme Court issued its opinion, the Ninth Circuit affirmed in part, reversed in part, and vacated in part this Court's summary judgment rulings for CSI, and remanded the case for further proceedings.

Now before the Court is CSI's post-remand motion for partial summary judgment on some of the claims revived by the Ninth Circuit. The Court heard oral argument on April 10, 2025. CSI's motion is GRANTED IN PART AND DENIED IN PART for the reasons discussed below.

United States District Court
Northern District of California

# I.    BACKGROUND[1]

### The Project

The Project is owned by First Solar, Inc. ("First Solar"), and is located on privately owned, undeveloped grassland.  First Solar retained CSI to perform procurement, installation, construction, and testing services at Phase 2 of the Project.  CSI employed hundreds of workers for those tasks and also arranged for one of its subcontractors, Milco National Constructors ("Milco") to assign additional workers to assist CSI on the Project.  Huerta was one of the Milco employees assigned to CSI.  Huerta's assignment to CSI lasted approximately one month, from June 13, 2018 to July 10, 2018.

Workers commuted to the Project in personal vehicles via a single access road running between a guard shack at the Project's perimeter ("Project Entrance") and the employee parking lots.  In order to avoid harm to local endangered species, a biologist ensured that the access road was clear each morning before workers were permitted to travel on it.  At times, there was a line of vehicles waiting for the biologist's all-clear.  Once workers entered the access road, they drove several miles before reaching a security gate ("Phase 2 Security Gate"), where they were required to stop and allow guards to scan their badges.[2]  After badging in at the Phase 2 Security Gate, workers drove for another 10 or 15 minutes before reaching the employee parking lots.

CSI's employees were covered by collective bargaining agreements ("CBAs") entitling them to an unpaid 30-minute meal period.  Huerta claims that the meal period should have been paid, asserting that workers remained under CSI's control during the meal period because CSI did not allow workers to leave the Project and instructed them to spend their meal period in designated areas.  CSI disputes those assertions, stating that workers could engage in personal business such as cell phone calls during the meal period and were not restricted to specific areas.

At the end of the workday, workers drove back to the Project Entrance, stopping at the Phase 2 Security Gate to have their badges scanned as they exited.  Guards sometimes looked

---

[1] The facts in this section are undisputed unless otherwise noted.

[2] The parties and witnesses also refer to the security gate as the "Phase 2 Badging Gate" and the "Phase 2 Security Badging Gate."

2

United States District Court
Northern District of California

1   inside exiting vehicles as well. Because many workers left the Project at the same time, vehicle

2   backups at the Phase 2 Security Gate could add as much as 20 minutes to the badge out process.

3   *The Present Action*

4   Huerta filed this action in the Monterey County Superior Court in against CSI and other

5   companies involved in the Project. *See* Notice of Removal, Ex. A. He contends that travel time

6   on the access road, wait time to badge in and out at the Phase 2 Security Gate, and unpaid meal

7   periods are compensable as "hours worked" under California law and Wage Order 16.[3]

8   The operative first amended complaint ("FAC") alleges the following causes of action:

9   (1) failure to pay wages for hours worked in violation of the California Labor Code and Wage

10  Order 16; (2) penalties for inaccurate wage statements under California Labor Code § 226;

11  (3) waiting time penalties under California Labor Code § 203; (4) failure to reimburse for mileage

12  in violation of California Labor Code § 2802; (5) unfair competition in violation of California

13  Business & Professions Code § 17200 *et seq.* ("California's UCL"); and (6) recovery of civil

14  penalties under PAGA, California Labor Code § 2698, *et seq. See* FAC, ECF 101.

15  CSI removed the action to federal district court pursuant to the Class Action Fairness Act,

16  28 U.S.C. § 1332(d). This Court approved the stipulated dismissal of several defendants. *See*

17  Order Approving Stipulation, ECF 69. The Court thereafter granted Huerta's motion for class

18  certification and granted final approval of a class action settlement with two of the three remaining

19  defendants, leaving CSI as the last defendant in the case. *See* Order Granting Motion for Class

20  Certification, ECF 119; Final Approval Order, ECF 139.

21  *Summary Judgment Rulings*

22  The Court granted two motions for partial summary judgment brought by CSI. In its order

23  on the first motion ("First MSJ Order"), the Court adjudicated 13 issues in CSI's favor. *See* First

24  MSJ Order, *Huerta v. CSI Elec. Contractors, Inc.*, No. 18-CV-06761-BLF, 2021 WL 4926978

---

[3] Subject to exceptions not relevant here, Wage Order 16 applies to all persons employed in the on-site occupations of construction, drilling, logging, and mining. *See generally* Wage Order 16, Cal. Code Regs. tit. 8, § 11160.

United States District Court
Northern District of California

(N.D. Cal. Apr. 28, 2021), *aff'd in part, vacated in part, rev'd in part*, No. 21-16201, 2022 WL 22812287 (9th Cir. May 30, 2024).  Issues 1-12 related to Wage Order 16 and the scope of "hours worked" under California law.  *See id.*  The Court understood its adjudication of Issues 1-12 to dispose of Huerta's First Cause of Action for unpaid wages.  The 13th issue adjudicated by the Court was that:  "CSI is entitled to summary judgment in its favor and against Plaintiff as to the Second, Third, Fourth, Fifth, and Sixth Causes of Action to the extent that they are derivative of the claims for hours worked that are adjudicated in CSI's favor in this motion."  *Id.*

Huerta argued that the Court's First MSJ Order did not entirely dispose of his First Cause of Action for unpaid wages, specifically, his claim for unpaid wages under Section 5(A) of Wage Order 16.  Section 5(A) provides that "[a]ll employer-mandated travel that occurs after the first location where the employee's presence is required by the employer shall be compensated at the employee's regular rate of pay or, if applicable, the premium rate. . . ."  Cal. Code Regs. tit. 8, § 11160.  Huerta asserted that the Phase 2 Security Gate was the first location his presence was required, and that he was entitled to compensation for his travel time after badging in at the Phase 2 Security Gate.  The Court allowed CSI to file a second motion for partial summary judgment on the issue.  In its order granting that motion ("Second MSJ Order"), the Court found "that Plaintiff's pass through the Security Gate was not the first location where Plaintiff's presence was required," and that he was not entitled to compensation for his subsequent travel time under Section 5(A) of Wage Order 16.  *Huerta v. CSI Elec. Contractors, Inc.*, No. 18-CV-06761-BLF, 2021 WL 2633409, at *3 (N.D. Cal. June 25, 2021), *vacated and remanded*, No. 21-16201, 2022 WL 22812287 (9th Cir. May 30, 2024).

*Judgment and Appeal*

To facilitate Huerta's appeal of this Court's summary judgment rulings, the parties stipulated to entry of judgment for Huerta on any remaining individual claims.  *See* Stipulated Judgment, ECF 158.  Huerta filed a timely appeal.  *See* Notice of Appeal, ECF 160.

The Ninth Circuit stayed the appeal and requested that the California Supreme Court answer three questions of state law relating to Wage Order 16 and the meaning of "hours worked."  *See Huerta v. CSI Elec. Contractors, Inc.*, 39 F.4th 1176 (9th Cir. 2022), *certified question*

1    *answered sub nom. Huerta v. CSI Elec. Contractors*, 15 Cal. 5th 908 (2024).  After the California

2    Supreme Court issued its opinion, the Ninth Circuit affirmed in part, reversed in part, and vacated

3    in part this Court's summary judgment rulings, and remanded for further proceedings.  *See Huerta*

4    *v. CSI Elec. Contractors, Inc.*, No. 21-16201, 2022 WL 22812287 (9th Cir. May 30, 2024).

5              *Revived Causes of Action*

6         The Ninth Circuit's decision revived three claims encompassed by Huerta's First Cause of

7    Action for unpaid wages, specifically, unpaid wage claims for:  (1) travel time on the access road

8    between the Phase 2 Security Gate and the employee parking lots ("Section 5A Claim");

9    (2) unpaid meal periods ("Controlled Meal Period Wage Claim"); and (3) time spent badging out

10   through the Phase 2 Security Gate ("Exit Badge Out Claim").  *See Huerta*, 2022 WL 22812287 at

11   *2-3.

12        The Ninth Circuit's decision also revived the Second, Third, Fourth, Fifth, and Sixth

13   Causes of Action.  This Court found those causes of action to be derivative of the First Cause of

14   Action, so when it granted partial summary judgment for CSI on the First Cause of Action, this

15   Court likewise granted partial summary judgment on the remaining causes of action.  After

16   vacating in part and reversing in part this Court's rulings with respect to the First Cause of Action,

17   the Ninth Circuit vacated the corresponding grant of summary judgment on the Second, Third,

18   Fourth, Fifth, and Sixth Causes of Action as "derivative of CSI prevailing on the other issues[.]"

19   *Huerta*, 2022 WL 22812287 at *3.

20              *Current Motion*

21        CSI now seeks partial summary judgment on two of the three claims contained in Huerta's

22   First Cause of Action for unpaid wages, specifically, the Section 5(A) Claim and Exit Badge Out

23   Claim.  CSI also seeks partial summary judgment on the Second Cause of Action for wage

24   statement penalties under California Labor Code § 226, and Third Cause of Action for waiting

25   time penalties under California Labor Code § 203.

26   **II.    LEGAL STANDARD**

27        A party may obtain summary judgment by showing that "there is no genuine dispute as to

28   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "The moving party initially bears the burden of proving the absence of a genuine issue of material

2    fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "Where the moving party

3    meets that burden, the burden then shifts to the non-moving party to designate specific facts

4    demonstrating the existence of genuine issues for trial." *Id.*

5         "The court must view the evidence in the light most favorable to the nonmovant and draw

6    all reasonable inferences in the nonmovant's favor."  *City of Pomona v. SQM North America

7    Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). "Where the record taken as a whole could not lead a

8    rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Id.*

9    (quotation marks and citation omitted).

10   **III.    DISCUSSION**

11        CSI seeks partial summary judgment on the Section 5A Claim and the Exit Badge Out

12   Claim contained in Huerta's First Cause of Action.  CSI also seeks partial summary judgment on

13   Huerta's Second and Third Causes of Action, seeking penalties under California Labor Code

14   § 226 and § 203, respectively.  Huerta contends that CSI has not established its entitlement to

15   partial summary judgment on any of those claims.

16        CSI's motion does not address the Controlled Meal Period Wage Claim contained in the

17   First Cause of Action, the Fourth Cause of Action for failure to reimburse for mileage in violation

18   of California Labor Code § 2802, the Fifth Cause of Action under California's UCL, or the Sixth

19   Cause of Action for recovery of civil penalties under PAGA.

20        Before discussing the parties' substantive arguments regarding the issues raised by CSI's

21   motion, the Court addresses evidentiary objections raised by Huerta in his opposition brief.  The

22   Court then takes up CSI's motion for partial summary judgment and Huerta's opposition thereto.

23        **A.    Huerta's Evidentiary Objections**

24        Huerta objects to declaration statements of three CSI witnesses:  Jake McGinley, a Project

25   Executive for CSI who was in charge of and managed CSI's work on the Project; Gary

26   Baumeister, a construction manager for First Solar, the owner of the Project; and Keith Mendes,

27   CSI's retained expert witness on wage and hour issues and damages.

28

1. **Jake McGinley**

Mr. McGinley's declaration describes CSI's work on the Project, the project's security measures (including the Phase 2 Security Gate), and Huerta's assignment to CSI by his employer, Milco.  *See* McGinley Decl., ECF 201-4.  Huerta's objections to Mr. McGinley's declaration statements, and the Court's rulings thereon, are set forth as follows:

*Paragraph 6*:  Mr. McGinley states that employees were required to badge in at the Phase 2 Security Gate to ensure that only authorized personnel could access the Project, and that the "sole purpose" of the Phase 2 Security Gate "was security and knowing who entered the Project area each day."  McGinley Decl. ¶ 6.  Huerta objects to those statements as lacking foundation, hearsay, and impermissible speculation.  McGinley's description of his role as the person in charge of CSI's work on the Project provides a sufficient foundation for his knowledge regarding the purpose of the security gate that CSI employees were required to badge through.  *See id*. ¶ 2.  Mr. McGinley's statement does not constitute hearsay, as it states only his own opinion and does not recite the out of court statement of any other person.  *See* Fed. R. Evid. 801 (defining hearsay as "a statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").  The objection is OVERRULED.

*Paragraph 9 and Exhibit 1*:  Mr. McGinley states that a side letter to the CBA governing work on the Project provided that employees would not be compensated for time spent traveling from the gate to their assigned work areas at the beginning of the workday, but would be compensated for time spent traveling back to the badge out gate at the end of their shifts.  *See* McGinley Decl. ¶ 9.  The side agreement – a Letter of Understanding – is attached to the McGinley declaration as Exhibit 1.  Huerta contends that Mr. McGinley's statement, and the side agreement, are inadmissible hearsay.  Mr. McGinley's own statement as to his understanding of the governing side agreement is not hearsay, because it is not the statement of an out of court declarant.  The Letter of Understanding speaks for itself and may be considered by the Court.  To the extent Huerta argues that he was not actually paid for time waiting to badge out, that is a different issue that does not bear on the admissibility of Mr. McGinley's statement and the Letter

7

of Understanding.  The objection is OVERRULED.

Paragraph 10:  Mr. McGinley states that CSI complied with the CBA in paying Huerta and other covered employees through the time they scanned out at the Phase 2 Security Gate.  *See* McGinley Decl. ¶ 10.  Huerta objects to that statement as lacking foundation.  The Court agrees. While Mr. McGinley's description of his role at CSI provides an adequate foundation for him to testify regarding the existence of the side agreement to the CBA, he has not established personal knowledge of facts supporting his statement that Huerta and other employees were actually paid for time spent waiting to scan out at the Phase 2 Security Gate in compliance with the side agreement and CBA.  Specifically, Mr. McGinley does not state that he reviewed Huerta's timesheets, badge in and badge out records, or other records showing that Huerta in fact was paid through the time he badged out at the Phase 2 Security Gate each day.  The objection is SUSTAINED.

The Court notes that Mr. McGinley may well be able to cure this technical defect at trial by testifying that he did review Huerta's time records.  For purposes of the present motion, the exclusion of Mr. McGinley's statements regarding actual payment to Huerta does not affect the Court's analysis, because as discussed below CSI presents other admissible evidence that Huerta was paid for time spent waiting to badge out at the Phase 2 Security Gate.

Paragraph 11:  Mr. McGinley states that during the period Huerta was assigned to CSI, he was paid for hours worked from his 7:00 a.m. reporting time through the time he scanned out at the Phase 2 Security Gate.  *See* McGinley Decl. ¶ 11.  Huerta objects to the statement for lack of foundation.  The objection is SUSTAINED for the reasons discussed above with respect to Paragraph 10.

Paragraph 12:  Mr. McGinley states that CSI employees working on the Project were permitted to use their cell phones during their meal break, and were not restricted as to where they could go during their meal break.  *See* McGinley Decl. ¶ 12.  Huerta objects to the statements for lack of relevance and lack of personal knowledge.  The statements clearly are relevant to Huerta's claim for unpaid meal periods.  And Mr. McGinley's role as the person in charge of CSI's work at the Project is sufficient to establish personal knowledge regarding CSI's policies regarding meal

periods.  The objection is OVERRULED.

*Paragraph 15*:  Mr. McGinley states that CSI paid its employees for all time reflected on their timesheets, and paid Milco for all hours recorded for each of its employees assigned to CSI. *See* McGinley Decl. ¶ 15.  Huerta objects to those statements for lack of foundation and relevance. The statements clearly are relevant to Huerta's unpaid wages claims.  However, the Court agrees that Mr. McGinley has not established a foundation for his representation that Huerta and other employees actually were paid all wages owed.  Mr. McGinley's declaration does not indicate that he personally reviewed timesheets or other employment records to confirm payment of all wages owed.  Without such review, it is unclear how Mr. McGinley could have personal knowledge of payment to Huerta or other employees.  The objection is SUSTAINED.

### 2.    Gary Baumeister

Mr. Baumeister's declaration states that he was a construction manager for First Solar (the Project's owner) for 10 years, and he lists seven First Solar projects he worked on, including projects in Nevada, Arizona, and California.  *See* Baumeister Decl. ¶ 2.  Mr. Baumeister states that First Solar always has security checkpoints to ensure that only authorized personnel enter the project, and that such checkpoints often include badging stations.  *See id.* ¶ 3.  He states further that although there are other benefits, "the singular purpose of a checkpoint is security and ensuring only authorized personnel enter a project."  *Id.*

Huerta objects to Mr. Baumeister's statements in Paragraph 2 regarding his work for First Solar at sites other than the Project at issue in this suit, arguing that work at other sites does not establish a foundation for knowledge about work at the Project site.  Huerta also objects to Mr. Baumeister's statements in Paragraph 3 (erroneously cited as Paragraph 2) regarding First Solar's security practices, because Mr. Baumeister did not work at the Project.  Finally, Huerta objects to Mr. Baumeister's statements regarding the purpose of security checkpoints on the ground that Mr. Baumeister made contradictory statements in a deposition taken in a different lawsuit.

Mr. Baumeister's role at First Solar establishes a sufficient foundation for him to speak to First Solar's security practices and the purposes of security checkpoints on First Solar projects generally.  The fact that Mr. Baumeister may have provided contradictory deposition testimony in

9

1    another lawsuit goes to the credibility of his declaration statements, but is not a basis for excluding

2    them.  Should this case go to trial, Mr. Huerta may challenge Mr. Baumeister's testimony through

3    cross-examination.

4         The objections to Mr. Baumeister's declaration statements is OVERRULED.

5              **3.    Keith Mendes**

6         Mr. Mendes is CSI's retained expert witness on wage and hour issues and damages.  *See*

7    Mendes Decl. ¶ 2.  He has submitted a declaration describing his review of time records

8    maintained by CSI and providing his expert opinion that Huerta was paid for all time worked

9    during his shifts, including the time spent waiting to badge out of the Phase 2 Security Gate.  *See*

10   *id.* ¶¶ 7-21.  In fact, Mr. Mendes states that Huerta was paid in excess of his hours worked by 6.67

11   hours.  *See id.*  Mr. Mendes also provides his expert opinion that CSI's other employees likewise

12   were paid for all hours from the start of the workday through the time they badged out through the

13   Phase 2 Security Gate.  *See id.*

14        Huerta asserts objections to several paragraphs of Mr. Mendes' declaration, but in essence

15   he asks the Court to disregard Mr. Mendes' expert opinions.  Federal Rule of Evidence 702

16   provides that a qualified expert may testify if "(a) the expert's scientific, technical, or other

17   specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

18   in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of

19   reliable principles and methods; and (d) the expert has reliably applied the principles and methods

20   to the facts of the case."  Fed. R. Evid. 702.  A party may seek exclusion of expert opinion by

21   means of a *Daubert* motion if the opinion is either irrelevant or unreliable.  *See Daubert v. Merrell*

22   *Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S.

23   137, 147 (1999); *General Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997).  However, so long as an

24   expert's methodology is sound and the expert's opinions satisfy the requirements of Rule 702,

25   underlying factual disputes and how much weight to accord the expert's opinion are questions for

26   the jury.  *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

27        Huerta has not challenged Mr. Mendes' qualifications as an expert.  Accordingly, the

28   Court understands Huerta to be seeking exclusion of Mr. Mendes' opinions on the ground that

United States District Court
Northern District of California

10

1    they are irrelevant or unreliable.  Mr. Mendes' opinions clearly are relevant.  Thus, the question is

2    whether Huerta has established that Mr. Mendes' methodology is so unreliable as to render his

3    opinions inadmissible.  Huerta argues that Mr. Mendes' opinions are flawed because they are

4    based on CSI timesheets and billing invoices instead of actual payroll records, and because Mr.

5    Mendes merely assumed that employees started work right at 7:00 a.m. and took their full 30-

6    minute meal breaks.  Huerta has not presented the opinion of his own expert, or any other

7    evidence, from which this Court could conclude that reliance on timesheets and billing invoices,

8    and any assumptions made in calculating wages, render Mr. Mendes' methodology unreliable.

9    　　　　Huerta argues that Mr. Mendes' opinions are unreliable because they are based in part on

10    statements of Mr. McGinley that lack foundation and are hearsay.  As discussed above, some of

11    Huerta's objections to Mr. McGinley's declaration statements are well-taken.  However, experts

12    may offer opinion based on evidence that would not itself be admissible.  *See* Fed. R. Evid. 703

13    ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming

14    an opinion on the subject, they need not be admissible for the opinion to be admitted."); *see also*

15    *United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013) (Experts may rely on testimony that

16    would not be directly admissible, as long as the experts apply their training and experience in

17    reaching an independent judgment and do not merely act as a conduit for otherwise inadmissible

18    testimony.).

19    　　　　Accordingly, Huerta's objection to Mr. Mendes' opinions is OVERRULED.

20    **B.    First Cause of Action – Section 5(A) Claim**

21    　　　　Huerta claims that the Phase 2 Security Gate was the first location his presence was

22    required, and that under Section 5(A) of Wage Order 16 he is entitled to compensation for his

23    travel time on the access road between the Phase 2 Security Gate and the employee parking lots at

24    the start of his workday.  The Court first discusses the legal standard applicable to the Section

25    5(A) claim, as explained by the California Supreme Court in response to certification of state law

26    issues by the Ninth Circuit.  Next, this Court considers the evidence offered by CSI to meet its

27    initial burden to show Huerta cannot satisfy the applicable legal standard.  And finally, the Court

28    considers the evidence offered by Huerta in response to CSI's motion.

### 1.    Legal Standard – Section 5(A) of Wage Order 16

Section 5(A) of Wage Order 16 provides that "[a]ll employer-mandated travel that occurs after the first location where the employee's presence is required by the employer shall be compensated at the employee's regular rate of pay or, if applicable, the premium rate. . . ." Cal. Code Regs. tit. 8, § 11160, subd. 5(A).  "[F]or time to be compensable as 'employer-mandated travel,' an employee need not be subject to the employer's control during the travel." *Huerta v. CSI Elec. Contractors*, 15 Cal. 5th 908, 924 (2024).  "The travel need only have occurred at the direction and command of the employer after the employee's arrival at the 'first location' where the employer required the employee's presence." *Id*.

In its opinion addressing the issues certified to it by the Ninth Circuit, the California Supreme Court held "that an employee's presence at a location is 'required by the employer' within the meaning of the wage order when it is required for an employment-related reason other than the practical necessity of reaching the worksite." *Huerta*, 15 Cal. 5th at 924-25.  "Examples include situations where an employee's presence at an initial location is required to pick up work supplies, receive work orders or other directives, or perform work before traveling to a second jobsite." *Id*. at 925.  "In sum, for travel time to be compensable under Wage Order No. 16, section 5(A), there must be evidence not only that the employer required the employee's presence at an initial location before mandating travel to a subsequent location, but also that the employee's presence was required for an employment-related reason other than accessing the worksite." *Id*. at 926.

Discussing Huerta's claim, the California Supreme Court noted the existence of conflicting evidence as to the reason Huerta's presence was required at the Phase 2 Security Gate.  *See Huerta*, 15 Cal. 5th at 925-26.  On the one hand, Huerta and other employees offered declarations that CSI told them the security gate was the first place they had to be.  *Id*. at 925.  The California Supreme Court opined that delays at the security gate while a biologist cleared the road and security guards scanned employees' badges "could support the view that CSI required employees' presence at the Security Gate for a purpose other than accessing the worksite, i.e., ensuring compliance with CSI's security and environmental protection protocols."  *Id*.  On the other hand,

United States District Court
Northern District of California

1    CSI offered evidence that it did not tell workers the security gate was the first location their

2    presence was required. *Id*. at 926. The California Supreme Court observed that it appeared

3    undisputed that passage through the security gate was "practically necessary in order to reach the

4    employee parking lots" because "there is no other access road." *Id*. at 926.

5        On that record, the California Supreme Court "express[ed] no view on whether the

6    Security Gate was 'the first location' where Huerta's presence was required by CSI such that his

7    travel time between the Security Gate and the employee parking lots is compensable." *Id*. at 925.

8    The California Supreme Court summarized its views on Huerta's Section 5(A) claim as follows:

9    "Here, whether the Security Gate is 'the first location' within the meaning of the wage order turns

10   on whether Huerta's presence there was required by CSI for an employment-related reason other

11   than the practical necessity of accessing the worksite, as well as the nature of any such reason."

12   *Id*. at 926. "Relevant considerations include, but are not limited to, what purpose is served by the

13   employee's presence at the location, what activities occur there, and how much time is spent

14   there." *Id*.

15       **2.    CSI's Evidence**

16       As the party moving for summary judgment, CSI has the initial burden to show that Huerta

17   cannot satisfy the legal standard set forth above. CSI does not challenge Huerta's assertion that he

18   was told the Phase 2 Security Gate was the first location his presence was required. *See* Pl's Decl.

19   ¶¶ 12, 17-19, ECF 128-2. Instead, CSI argues that Huerta cannot establish that the Phase 2

20   Security Gate qualifies as the "the first location" for purposes of Section 5(A). Specifically, CSI

21   contends that Huerta cannot show that his presence at the Phase 2 Security Gate was required by

22   CSI for an employment-related reason other than the practical necessity of accessing the Project

23   worksite.

24       CSI argues that the only purpose for the Phase 2 Security Gate was worksite security. It is

25   CSI's position that "[s]ecurity at an access point cannot be an 'employment-related reason other

26   than the practical necessity of accessing the worksite[.]'" Def.'s Mot. at 5, ECF 201. CSI reasons

27   that if security can qualify as an employment-related reason other than accessing the worksite,

28   "then any locked door requiring a key to open it would be 'the first location where the employee's

13

1    presence is required by the employer.'" *Id.* In opposition, Huerta argues that the Phase 2 Security

2    Gate is not akin to a locked door to a building, because workers were required to report there after

3    they had already passed the first guard shack at the Project Entrance and had driven several miles

4    onto the Project land. Huerta contends that setting up a security checkpoint well onto the Project

5    land conferred a benefit on the employers that was separate from the practical necessities of

6    worker access citing *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1052-53 (2020), for the proposition

7    that an employer's security concerns are employment related.

8          Huerta's reliance on *Frlekin* is misplaced, as the cited portion of the decision addresses an

9    employee's entitlement to wages for employer-controlled activity, whereas the dispute here

10   centers on entitlement to wages for employer-mandated travel, during which an employee need not

11   be subject to the employer's control. However, the Court is persuaded by Huerta's argument that

12   application of Section 5(A) is not necessarily precluded where worksite security is the reason for

13   requiring employees to report to a particular location at the start of the workday. CSI cites no

14   authority holding that that compliance with a company's security protocol cannot be an

15   employment-related reason for requiring an employee's presence at a particular location, separate

16   from merely facilitating access to the worksite. When addressing the facts of this case, the

17   California Supreme Court suggested that worksite security could be an employee-related reason

18   sufficient to satisfy Section 5(A). The California Supreme Court opined that *having employees*

19   *wait while* a biologist cleared the road and *guards scanned employee badges* "could support the

20   view that CSI required employees' presence at the Security Gate for *a purpose other than*

21   *accessing the worksite*, i.e., *ensuring compliance with CSI's security* and environmental protection

22   *protocols*." *Huerta*, 15 Cal. 5th at 925 (emphasis added). CSI correctly points out that the

23   California Supreme Court's references to the biologist's activities do not bear on the current

24   analysis, because those activities occurred at a location other than the Phase 2 Security Gate. But

25   CSI ignores the other half of the California Supreme Court's statement, which appears to suggest

26   that ensuring compliance with CSI's security protocols could be an employment-related purpose

27   satisfying Section 5(A) of Wage Order 16. *See id.*

28         CSI urges this Court to adopt its own reasoning in *Griffin v. Sachs Elec. Co.*, 390 F. Supp.

*United States District Court*
*Northern District of California*

14

3d 1070, 1096-97 (N.D. Cal. 2019), *aff'd*, 831 F. App'x 270 (9th Cir. 2020), a decision addressing a nearly identical Section 5(A) claim arising from the same Project site.  In *Griffin*, this Court found "that Plaintiff's brief stop at the guard shack to enable scanning of his badge was not a 'location where the employee's presence is required' within the meaning of Wage Order 16 ¶ 5(A)."  *Id*.  The flaw in CSI's argument is that this Court did apply the reasoning in *Griffin* to the present case when it granted the defense motion for partial summary judgment, and was reversed.  Given the California Supreme Court's opinion, and absent other controlling authority directly on point, this Court declines to find that ensuring compliance with a security protocol cannot be an employment-related reason for requiring an employee's presence at a particular location within the meaning of Section 5(A) of Wage Order 16.

CSI presents substantial evidence that workplace security was its reason for requiring employees' presence at the Phase 2 Security Gate at the start of the workday.  *See, e.g.*, Baumeister Decl. ¶ 3, ECF 201-1; McGinley Decl. ¶ 6, ECF 201-4.  However, because CSI has not established that ensuring compliance with a security protocol cannot be an employment-related reason for requiring an employee's presence at a particular location, that evidence is insufficient to meet CSI's initial burden on summary judgment with respect to Huerta's Section 5(A) claim.

### 3.    Huerta's Evidence

Even if the Court were to find that CSI's evidence of a security-related reason for the Phase 2 Security Gate were sufficient to meet CSI's initial burden (and it does not), Huerta presents evidence that CSI required workers to report to the Phase 2 Security Gate for reasons other than worksite security.  One of the construction managers at the Project, Richard Backus, testified that "the use of the badging system [was] for accountability purposes.  In case there's a catastrophe or something that comes up, we have to know who's on our projects."  Backus Dep. 26:6-9, Ex. 6 to Dion-Kindem Decl., ECF 206-1.  Mr. Backus also testified that the badging system was used when reporting individuals who had Valley Fever.  *See id.* 26:9-15.  Workers' badge in and badge out timestamps are recorded and used to determine wages owed.  *See* Mendes Decl. ¶ 12, ECF 201-2.  Huerta's evidence is sufficient to create a factual dispute as to the reason for the requirement that workers badge in at the Phase 2 Security Gate at the start of the workday.

United States District Court
Northern District of California

1  CSI argues that Huerta confuses the reasons for the badging requirement with the benefits

2  of badging.  According to CSI, the *reason* for the requirement that employees badge in at the

3  Phase 2 Security Gate was to ensure the security of the worksite, and any other uses that were

4  made of badge in and badge out records were merely secondary benefits of the badging process.

5  CSI points to the declaration of Gary Baumeister, an experienced construction manager for First

6  Solar, the Project's owner.  *See* Baumeister Decl., ECF 201-1.  Mr. Baumeister states that First

7  Solar has a badging station or similar checkpoint on every project, and that "[t]he overriding and

8  sole purpose of having a checkpoint where only authorized personnel are permitted to proceed is

9  security."  *Id.* ¶ 3.  Mr. Baumeister acknowledges that there are other benefits to keeping a log of

10  individuals who enter a project, such as making sure that no one is left behind in an emergency,

11  but that the "singular purpose of a checkpoint is security[.]"  *Id.*

12  Mr. Baumeister's declaration statements are strong evidence that worksite security is the

13  sole reason for the requirement that workers badge in at the Phase 2 Security Gate.  However, to

14  the extent CSI invites the Court to accept Mr. Baumeister's statements as the final word on the

15  subject, the Court must decline.  The Court may not weigh or assess the credibility of evidence at

16  the summary judgment stage.  Huerta has presented evidence of other employer-related reasons for

17  the Phase 2 Security Gate.  Huerta argues that there is no case requiring that there be only one

18  employer-related reason to implicate Section 5(A) of Wage Order 16.  If there is such a case, it

19  was not cited to the Court.

20  CSI cites several cases addressing the meaning of the term "reason" in the context of

21  claims for adverse employment action, for example, cases holding that the "reason" for an adverse

22  employment action is the "but-for" cause of the action, *see Bridge v. Phoenix Bond*, 553 U.S. 639,

23  652-55 (2008), and cases holding that an unlawful "reason" for adverse employment action will

24  not support liability where the employer also had a lawful reason, *see Harris v. Santa Monica*, 56

25  Cal. 4th 203, 215 (2013).  The cited cases did not involve Wage Order 16 or facts similar to those

26  at issue here, and simply do not appear to be applicable.

27  **4.  Conclusion**

28  The Court concludes that CSI has failed to meet its initial burden of showing that Huerta

1    cannot establish that his presence was required at the Phase 2 Security Gate for an employment-

2    related reason other than accessing the worksite.

3        Even if CSI had met its initial burden, Huerta has demonstrated the existence of disputed

4    facts as to the reasons his presence was required at the Phase 2 Security Gate at the start of the

5    workday.

6        Accordingly, CSI's motion for partial summary judgment on Huerta's Section 5(A) claim

7    is DENIED.

8        **C.    First Cause of Action – Exit Badge Out Claim**

9        Huerta claims that he is entitled to wages for the time spent badging out through the Phase

10    2 Security Gate ("Exit Badge Out Claim") at the end of the day.  The record reflects that CSI and

11    the union entered into a side agreement to the governing CBAs, under which employees would be

12    compensated through the time they badged out at the Phase 2 Badging Gate at the end of the

13    workday.  *See* McGinley Decl. ¶ 9, Ex. 1.  CSI does not dispute that Huerta was entitled to wages

14    for the time spent waiting to badge out, and badging out, through the Phase 2 Security Gate.

15    However, CSI asserts that it paid Huerta for that time.  Huerta does not offer a declaration or any

16    other affirmative evidence showing that he was not paid for time spent badging out of the Phase 2

17    Security Gate.  Instead, he argues that CSI's evidence does not include every shift he worked, and

18    therefore does not meet CSI's initial burden on this claim.

19        **1.    CSI's Evidence**

20        CSI submits the declaration of its Project Executive, Jake McGinley.  *See* McGinley Decl.

21    ¶ 2.  Mr. McGinley states that a side letter to the CBA governing work on the Project provided that

22    employees would be compensated for time spent traveling back to the Phase 2 Security Gate at the

23    end of their shifts.  *See id*. ¶ 9.  The side agreement – a Letter of Understanding – is attached to the

24    McGinley declaration as Exhibit 1.

25        CSI also submits the declaration of its expert, Keith Mendes, who reviewed timesheets

26    maintained by CSI, as well as badge in and badge out records for CSI employees.  *See* Mendes

27    Decl. ¶¶ 6-7.  Based on those records, Mr. Mendes concludes that Huerta worked 11 shifts for

28    which he had both timesheets and badge in/out records.  *See id.* ¶¶ 17-18.  Mr. Mendes did not

United States District Court
Northern District of California

consider records for which he did not have badge in/out records.  *See id.* ¶ 13.  With respect to the 11 shifts worked by Huerta for which Mr. Mendes had timesheets as well as badge in and badge out records, Mr. Mendes concludes that Huerta was paid for all time between his 7:00 a.m. morning meeting with his crew and the time he badged out of the Phase 2 Security Gate.  *See id.* ¶ 21.  In fact, Mr. Mendes states that Huerta was paid in excess of his hours worked by 6.67 hours. *See id.* ¶ 17.

Mr. Mendes also evaluated the timesheets and badge in and badge out records of 183 other CSI employees who worked at the Project between the beginning of May 2018 through the end of August 2018.  *See id.* ¶¶ 15-17.  That period spans the entire time Huerta was assigned to work for CSI at the Project.  Mr. Mendes concludes that during the May 2018 through August 2018 time frame, CSI's employees were paid for all hours from the start of the workday through the time they badged out through the Phase 2 Security Gate.  *See id.*

This evidence is sufficient to show that CSI had a written side agreement to the governing CBAs requiring it to pay wages for time its employees spent waiting to badge out through the Phase 2 Security Gate; that CSI generally complied with that agreement; and that CSI complied with that agreement in Huerta's case.  The burden therefore shifts to Huerta to present evidence sufficient to show a factual dispute as to whether CSI paid Huerta for the time he spent waiting to badge out through the Phase 2 Security Gate.

### 2.    Huerta's Evidence

Because CSI has met its initial burden, the burden shifts to Huerta to present evidence showing he was not paid for time spent waiting to badge out through the Phase 2 Security Gate. Huerta does not present any evidence on that issue.  Instead he argues that CSI's evidence is insufficient to meet its initial burden.

Huerta asserts that Mr. Mendes' declaration does not address all his shifts at the project. Mr. Mendes offers his opinion that Huerta was paid for all time up until he badged out for 11 shifts, but Huerta actually worked 15 shifts during the period in question.  Huerta does not claim that badge in and badge out records are available for the 4 days not addressed by Mr. Mendes.  He simply argues that the lack of badge records is CSI's problem, and that CSI's failure to

specifically address the 4 additional days renders its showing insufficient on summary judgment. The Court disagrees. CSI has presented ample evidence that, consistent with its obligations under the side agreement to the CBAs, CSI paid Huerta through the time he badged out on 11 of the 15 days he worked. CSI likewise has presented evidence that, during the four month period spanning the month Huerta was assigned to CSI, CSI paid its 183 other employees for the time they spent waiting to badge out through the Phase 2 Security Gate. No reasonable jury could conclude that Huerta was not paid for all time spent badging out, even for the 4 days as to which specific badge out records were not available to Mr. Mendes.

Huerta also asks the Court to disregard Mr. Mendes' expert opinions. That request is denied for the reasons discussed above.

Huerta easily could have submitted a declaration statement identifying shifts for which he was not paid for time spent badging out. He did not do so. Nor did he submit any other affirmative evidence of nonpayment. Accordingly he has failed to meet his burden to demonstrate a material dispute of fact.

### 3. Conclusion

CSI has satisfied its initial burden on the Exit Badge Out Claim by presenting evidence that Huerta was paid for the time he spent waiting to badge out through the Phase 2 Security Gate at the end of his shifts. Huerta has failed to satisfy his burden to submit evidence creating a dispute as to that fact. Accordingly, CSI's motion for partial summary judgment on Huerta's Exit Badge Out Claim is GRANTED.

### D. Second and Third Causes of Action for Penalties under § 226 and § 203

Huerta's Second Cause of Action is for wage statement penalties under California Labor Code § 226, which "requires employers to provide their employees with written wage statements listing gross and net wages earned, hourly pay rates, hours worked, and other employment-related information." *Naranjo v. Spectrum Sec. Servs., Inc.*, 15 Cal. 5th 1056, 1064 (2024) (citing Cal. Lab. Code § 226). Where an employee shows that an employer has failed to comply with this requirement, the employee may obtain an injunction compelling compliance and an award of reasonable attorneys' fees and costs. *See Naranjo*, 15 Cal. 5th at 1064; Cal. Lab. Code § 226(h).

1    "[I]n the case of a 'knowing and intentional failure . . . to comply,' the law provides for statutory

2    penalties of up to $4,000 or the employee's actual damages, should the employee's damages

3    exceed the statutory penalties. *Naranjo*, 15 Cal. 5th at 1064 (citing Cal. Lab. Code § 226(e)(1)).

4        Huerta's Third Cause of Action is for waiting time penalties under California Labor Code

5    § 203. That section provides that if an employer "willfully" fails to pay wages upon discharge, the

6    employee's wages "shall continue as a penalty" from the discharge date for up to thirty days. Cal.

7    Lab. Code § 203(a). For purposes of the statute, "discharge" includes not only involuntary

8    termination, but also release of employment upon the completion of a job assignment. *See Hill v.*

9    *Walmart Inc.*, 32 F.4th 811, 814 (9th Cir. 2022).

10       Both the Second and Third Causes of Action are grounded in Huerta's First Cause of

11   Action for unpaid wages, which following remand encompasses: the Section 5A Claim, the

12   Controlled Meal Period Wage Claim, and the Exit Badge Out Claim. CSI contends that whether

13   or not Huerta prevails on those claims, CSI should not be penalized for failing to include the

14   wages at issue in Huerta's wage statements or final paycheck, because there was a good faith

15   dispute as to Huerta's entitlement to the wages. The Court first discusses the legal standard

16   applicable to CSI's good faith dispute defense. Next, the Court considers the evidence offered by

17   CSI to meet its initial burden to show that it satisfies that standard. And finally, the Court

18   considers the evidence offered by Huerta in response to CSI's motion.

19                    **1.    Legal Standard – Good Faith Dispute Defense**

20       Under California law, "an employer's objectively reasonable, good faith belief that it has

21   provided employees with adequate wage statements precludes an award of penalties under section

22   226, subdivision (e)(1)." *Naranjo*, 15 Cal. 5th at 1087. Similarly, "a good faith dispute that any

23   wages are due will preclude imposition of waiting time penalties under [§ 203]." *Hill*, 32 F.4th at

24   816. In *Hill*, the Ninth Circuit made clear that an objective standard applies to a good faith

25   defense to a § 203 claim. *See Hill*, 32 F.4th at 817. The operative question is whether, based on

26   the state of the law at the time the alleged penalty was incurred, the employer had an objectively

27   reasonable defense that was not marred by bad faith conduct. *See id.* "Unless there is evidence of

28   subjective bad faith, it is beside the point that [employer] may have only formulated its . . .

United States District Court
Northern District of California

United States District Court
Northern District of California

1  arguments during litigation." *Id*. (internal quotation marks and citation omitted).  Two years later,

2  in *Naranjo*, the California Supreme Court advised that, "As a practical matter, because employees

3  so often bring claims for violations of section 203 and section 226 that derive from the same

4  primary violations of the Labor Code, the two penalty provisions are best read in a manner that

5  harmonizes them rather than one that sets them at cross-purposes." *Naranjo*, 15 Cal. at 1080.

6  **2.      CSI's Evidence**

7  CSI argues that under the legal standard articulated in *Hill* and *Naranjo*, it cannot be liable

8  for wage statement penalties under § 226 or waiting time penalties under § 203, because it had an

9  objectively reasonable basis for disputing Huerta's entitlement to the wages at issue.  As evidence,

10  CSI points to this Court's orders granting its motions for partial summary judgment on Huerta's

11  First Cause of Action for unpaid wages, as well as his derivative Second and Third Causes of

12  Action under § 226 and § 203, respectively.  When Huerta appealed those rulings, the Ninth

13  Circuit felt the need to certify the relevant issues to the California Supreme Court based on the

14  absence of controlling state law.  *See Huerta*, 39 F.4th at 1179.  Given that history, CSI argues,

15  any rational trier of fact would find that CSI's conduct was objectively reasonable.

16  The Court agrees.  Because CSI has shown that its conduct was objectively reasonable, it

17  has shown that it is entitled to summary judgment on the Second and Third Causes of Action,

18  absent evidence that CSI acted with subjective bad faith.  The burden shifts to Huerta to show the

19  existence of a material dispute of fact as to whether CSI's conduct was objectively reasonable, or

20  whether CSI acted with subjective bad faith.

21  **3.      Huerta's Evidence**

22  Huerta does not offer any evidence that the law was clear with respect to his entitlement to

23  the wages at issue, nor could he given the procedural record in this case.  Huerta argues that CSI is

24  not entitled to summary judgment on the claims for penalties under § 226 absent a showing of

25  *subjective* good faith.  However, as discussed above, the Court is satisfied that the objective

26  standard applicable to Huerta's § 203 claim also applies to his § 226 claim.

27  **4.      Conclusion**

28  CSI has established that its failure to pay the disputed wages, and thus its corresponding

alleged violations of § 226 and § 203, were objectively reasonable.  Huerta has not shown the existence of a material dispute of fact as to whether CSI's conduct was objectively reasonable, or whether CSI acted with subjective bad faith.

Accordingly, CSI's motion for partial summary judgment on the Second and Third Causes of Action is GRANTED.

## IV.    ORDER

(1)    CSI's motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART, as follows:

    (1)    the motion for partial summary judgment is GRANTED as to the Exit Badge Out Claim contained in the First Cause of Action, as to the Second Cause of Action for wage statement penalties under California Labor Code § 226, and as to the Third Cause of Action for waiting time penalties under California Labor Code § 203; and

    (2)    the motion for partial summary judgment is DENIED as to the Section 5(A) Claim contained in the First Cause of Action for travel time between the Phase 2 Security Gate and the employee parking lots.

(2)    This order terminates ECF 201.

Dated:  May 14, 2025

_____

BETH LABSON FREEMAN
United States District Judge